Michael J. Stortz (SBN 139386)
Michael.Stortz@klgates.com
K. Taylor Yamahata (SBN 347192)
Taylor.Yamahata@klgates.com
K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Attorneys for Defendant
HP INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JAMES IANOZI, ROSS WHEELER, ADAM SORKIN, JENNY KOOB, JEAN HOUSEMAN, and LINAY JAMES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HP INC.,

Defendant.

Case No. 5:26-cv-02164-PCP (VKD)

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: September 3, 2026
Time: 9:00 a.m.
Location: Courtroom 8 – 4th Floor
Judge: Hon. P. Casey Pitts

Complaint Filed: March 12, 2026
Am. Compl. Filed: June 5, 2026

## TABLE OF CONTENTS

Page


**I. INTRODUCTION** ... 1

**II. STATEMENT OF ISSUES TO BE DECIDED** ... 1

**III. BACKGROUND** ... 1

**IV. ARGUMENT** ... 3

A. Plaintiffs Lack Article III Standing. ... 3

B. Plaintiffs Fail to State a Claim. ... 5

1. Plaintiffs Fail to State a Claim under CIPA § 631 and the ECPA. ... 5

a. Plaintiffs' CIPA § 631 and ECPA Claims Are Deficient. ... 5

i. Plaintiffs Fail to Allege the Interception of "Contents." ... 6

ii. Plaintiffs Fail to Allege Any Contents Were Intercepted "In Transit." ... 8

iii. Plaintiffs' Claims Fail Because HP Was a Party to the Alleged Communications. ... 9

b. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Is Deficient. ... 10

2. Plaintiffs Fail to State a Claim for Invasion of Privacy. ... 13

3. Plaintiffs' Fraud Claims Fail Under Rule 9(b). ... 16

a. Plaintiffs Fail to Plead Fraud with Particularity. ... 16

b. Plaintiffs Wheeler and Sorkin Cannot Allege Justifiable Reliance. ... 17

c. Plaintiffs Fail to Adequately Allege Scienter. ... 18

4. Plaintiffs' Unjust Enrichment Claim Fails. ... 19

5. Plaintiff Houseman's New York Statutory Claims Fail. ... 20

a. Plaintiff Houseman's N.Y. GBL § 349 Claim Is Deficient. ... 20

b. Plaintiff Houseman's N.Y. GBL § 350 Claim Is Deficient. ... 21

c. Plaintiffs' N.Y. Civil Rights Law §§ 50 and 51 Claim is Deficient. ... 23

6. Plaintiffs' Declaratory Judgment Claim Fails. ... 24

**V. CONCLUSION** ... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ............................ 8

*Arrington v. New York Times Co.*,
55 N.Y.2d 433 (1982) ........................................................................................ 23, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 3

*Bildstein v. MasterCard Intern. Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) .................................................................... 20

*BMaddox Enterprises LLC v. Milad Oskouie, Osko M Ltd.*,
No. 17-CV-1889 (RA), 2021 WL 3675072 (S.D.N.Y. Aug. 18, 2021) ................................ 20

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................ 5, 19

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30724, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024) .................................... 11

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ..................................................................... 5

*Cohen v. Casper Sleep Inc.*,
Nos. 17cv9325, 17cv9389, 17cv9391, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) ........................................................................................................... 22

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2017) ................................................................................. 25

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018) ..................................................................... 20

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................................... 13

*Forouzesh v. Starbucks Corp.*,
No. CV 16-3830 PA, 2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) .................................... 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ........................................ 3

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. April 1, 2026) ........................ 4, 5

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314 (2002) ........................................ 21

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................ 25

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........................................ 6, 13

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........................................ 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........................................ 14, 15

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) ........................................ 19

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ........................ 14

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........................................ 3, 7

*Ingraham v. Capital One Financial Corp.*,
No. 24-cv-05985, 2026 WL 1755170 (N.D. Cal. May 22, 2026) ........................ 3

*In re iPhone App. Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................ 16

*Jahr Printing & Publ'g*,
94 N.Y.2d 436 (2000) ........................................ 23, 24

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........................ 21

*Katz-Lacabe v. Oracle Am. Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................ 6, 7

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................ 16, 17, 18

*Khamooshi v. Politico LLC*,
No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........................ 3, 4

*King v. Hard Rock Cafe Int'l (USA) Inc.*,
No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419 ........................................................ 7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) .................................... 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)................................................................................. 8

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)...................................................................... 8

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)...................................................................... 8

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .................................. 13

*Lohan v. Perez*,
924 F. Supp. 2d 447 (E.D.N.Y. 2013) ..................................................................... 23

*Lohan v. Take-Two Interactive Software, Inc.*,
31 N.Y.3d 111 (2018) ........................................................................................... 23

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................. 13

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*,
306 F.3d 806 (9th Cir. 2002)................................................................................ 15

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ................................................................... 6, 7

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ................................................................... 12

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)................................................................................. 21

*Palacios v. Office Depot, LLC*,
No. 24STCV11977, 2024 WL 7006626 (Cal. Super. Dec. 4, 2024) .................................... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)............................................................................ 3, 4, 5

*Reit v. Yelp!, Inc.*,
807 N.Y.S.2d 411 (N.Y. Sup. Ct. 2010) .................................................................. 22

*Robinson v. HSBC Bank USA*,
732 F. Supp. 2d 976 (N.D. Cal. 2010) .......... 19

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 8

*Rodriguez v. Ink America International Group LLC*
No. 24STCV24953, 2025 WL 4034985 (Cal. Super. Dec. 10, 2025) .......... 11

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) .......... 11

*Sepanossian v. Nat'l Ready Mix Co., Inc.*,
97 Cal. App. 5th 192 (2023) .......... 19

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 15, 19

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .......... 25

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 11

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 .......... 9

*Stutman v. Chemical Bank*,
95 N.Y.2d 24 (2000) .......... 20

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .......... 18, 19

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 8, 10

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 8

*Warren v. Mariner Finance, LLC*,
No. 16-CV-221, 2020 WL 4676658 (W.D.N.Y. Aug. 12, 2020) .......... 20

*Whalen v. Michaels Stores, Inc.*,
153 F. Supp. 3d 577 (E.D.N.Y. 2015) .......... 21

*White v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
No. 20-cv-04048-SVK, 2020 WL 13578444 (N.D. Cal. Nov. 17, 2020) .............................. 18

*Wiley v. Universal Music Group*,
No. 25-cv-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ................................ 17

*Williams v. What If Holdings LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. 2022) ......................................... 9, 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................... 15

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................................................................. 6, 7, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................................................ 6

**Statutes**

18 U.S.C. § 2510 ............................................................................................................ 2

18 U.S.C. § 2510(8) ........................................................................................................ 6

18 U.S.C. §§ 2511(1)(a)–(d) ............................................................................................ 8

18 U.S.C. § 2511(2)(d) ............................................................................................... 9, 10

28 U.S.C. § 2201 .......................................................................................................... 24

Cal. Penal Code § 20 ..................................................................................................... 13

Cal. Penal Code § 631(a) ........................................................................................ *passim*

Cal. Penal Code § 638.50 ..................................................................................... 2, 10, 13

Cal. Penal Code § 638.50(b) ...................................................................................... 10, 12

Cal. Penal Code § 638.50(c) ............................................................................................ 10

Cal. Penal Code § 638.51 ................................................................................ 2, 10, 11, 13

Cal. Penal Code § 638.51(a) ............................................................................................ 10

Cal. Penal Code § 638.52(d)(1) ....................................................................................... 11

Cal. Penal Code § 638.52(d)(3) ....................................................................................... 11

CIPA § 638.51(a) ............................................................................................................ 10

Declaratory Judgment Act ........................................................................................ 24, 25

Electronic Communications Privacy Act (“ECPA”) ............................................... *passim*

Federal Pen Register Act .......... 11
Gen. Bus. Law § 349 .......... *passim*
Gen. Bus. Law § 350 .......... 2, 19, 21, 22
New York Civil Rights Law § 50 .......... 2, 19, 22
New York Civil Rights Law §51 .......... 3, 20, 22, 23
New York Deceptive Acts .......... 2
New York Gen. Bus. Law § 350-a .......... 21
New York Practices Act .......... 2
Privacy Act .......... 2

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .......... *passim*
Federal Rules of Civil Procedure 12(b)(1) .......... 3, 1, 5
Federal Rules of Civil Procedure 12(b)(6) .......... 3, 1

**NOTICE OF MOTION AND MOTION:**

PLEASE TAKE NOTICE that on September 3, 2026 at 9:00 a.m., in Courtroom 8, 4th floor of the United States District Court for the Northern District of California, located at 280 South 4th St., San Jose, California 95112, Defendant HP Inc. will, and hereby does, move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing the Amended Class Action Complaint ("Amended Complaint").

The motion is based on three independent grounds: (1) the Amended Complaint does not allege Plaintiff-specific facts sufficient to establish Article III standing; (2) all eleven causes of action fail to state a claim upon which relief can be granted; and (3) the fraud-based claims do not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). More specifically, the Amended Complaint fails to allege facts showing that each Plaintiff suffered a concrete injury sufficient to confer Article III standing; that HP intercepted protected communications, used a pen register or trap-and-trace device within the meaning of CIPA, invaded any cognizable privacy interest, caused any actionable injury under New York law, or was unjustly enriched; or that there is any independent basis for declaratory relief. In addition, Plaintiffs lack standing to pursue certain claims, and the claims sounding in fraud are not pled with the particularity required by Rule 9(b).

The motion is based upon this Notice of Motion, the Memorandum of Points and Authorities attached hereto, all pleadings, records, and papers on file in this action, and all other such argument and evidence as may be presented in connection with this Motion.

Dated: July 6, 2026

K&L GATES LLP

By: */s/ Michael J. Stortz*
Michael J. Stortz
K. Taylor Yamahata

Attorneys for Defendant
HP INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs James Ianozi, Ross Wheeler, Adam Sorkin, Jenny Koob, Jean Houseman, and Linay James ("Plaintiffs") allege that Defendant HP Inc. ("Defendant" or "HP") violated various federal and state statutes and common law, based on the disclosures in different consent banners on HP's website. Plaintiffs' Amended Complaint suffers from multiple deficiencies that require its dismissal.

***First***, the Amended Complaint does not allege facts particular to Plaintiffs' own individual experiences sufficient to establish Article III standing. ***Second***, each of the eleven causes of action fails to state a viable claim for relief. Specifically, the Amended Complaint does not plausibly allege an in-transit interception of communications; the pen register and trap-and-trace claims do not extend to routine website tracking technologies and conflict with the statutory definitions of such devices; the New York statutory claims do not allege any cognizable injury, or otherwise do not apply to consent banners or the data allegedly collected; and the remaining common law and statutory claims fail for lack of the requisite degree of offensive conduct, cognizable economic harm, or any cognizable legal theory. ***Third***, the fraud-based claims are not alleged with the specificity required by Federal Rule of Civil Procedure 9(b).

Accordingly, the Court should dismiss Plaintiffs' Amended Complaint.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Should the Amended Complaint be dismissed under Rule 12(b)(1) for lack of Article III standing?

2. Should the Amended Complaint be dismissed under Rule 12(b)(6) for failure to state a claim?

3. Should the Amended Complaint's fraud-based claims be dismissed for failure to comply with Rule 9(b)?

## III. BACKGROUND

Plaintiffs Ianozi, Wheeler, Sorkin, Koob, Houseman, and James are residents of Delaware, Oregon, Illinois, California, New York, and California, respectively. Am. Compl. (Dkt. 15) ¶¶ 15,

17, 19, 21, 23, 25. Plaintiffs allege that HP is a for-profit corporation incorporated under the laws of the State of Delaware, with its principal place of business in Palo Alto, California. *Id.* ¶ 27. HP designs, manufactures, and sells personal computing devices, printers, and related products and services, and offers those products for sale through its nationally accessible commercial website, https://www.hp.com/us-en/home.html (the "Website"). *Id.* Through the Website, users may browse products, customize computers and printers, access support services, create accounts, make purchases, and explore promotional offers. *Id.* ¶ 2.

Plaintiffs allege that HP made unauthorized disclosures of customers' private communications and browsing data via software provided by third parties. *Id.* ¶¶ 1, 7. Specifically, Plaintiffs allege that the Website displays a cookie banner and a "cookie preferences" interface purporting to give users meaningful control over what data the Website shares with third parties, while not actually honoring that control. *Id.* ¶ 2. Instead, Plaintiffs assert HP voluntarily integrated third-party "Tracking Tools" into the Website's programming pursuant to commercial agreements with those third parties. *Id.* ¶ 46. The third parties allegedly at issue are TikTok Inc., Meta Platforms, Inc., Google LLC, Reddit, Inc., X Corp. (f/k/a Twitter, Inc.), The Trade Desk, Inc., New Relic, Inc., and Bazaarvoice, Inc. *Id.* ¶¶ 76–212. According to Plaintiffs, HP incorporated these Tracking Tools on the Website to serve targeted advertisements in order to "earn more money" and otherwise enhance marketing effectiveness through user data. *Id.* ¶ 51.

Plaintiffs bring eleven causes of action: (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq*.; (2) common law invasion of privacy—intrusion upon seclusion; (3) invasion of privacy under the California Constitution, Art. I, § 1, on behalf of Plaintiffs Koob and James and the California Subclass; (4) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, on behalf of Plaintiffs Koob and James and the California Subclass; (5) violation of CIPA, Cal. Penal Code §§ 638.50 and 638.51, on behalf of Plaintiffs Koob and James and the California Subclass; (6) violation of New York's Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, on behalf of Plaintiff Houseman and the New York Subclass; (7) violation of New York's False Advertising Law, N.Y. Gen. Bus. Law § 350, on behalf of Plaintiff Houseman and the New York Subclass; (8) invasion of privacy and violation of N.Y.

Civil Rights Law §§ 50 and 51, on behalf of Plaintiff Houseman and the New York Subclass; (9) common law fraud, deceit, and/or misrepresentation; (10) unjust enrichment; and (11) declaratory judgment. *Id.* ¶¶ 260–389.

## IV. ARGUMENT

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Id.*

### A. Plaintiffs Lack Article III Standing.

To establish Article III standing, a plaintiff must show he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). Harm is "concrete" only if the injury bears a "close relationship" to harm "traditionally" recognized as basis for a lawsuit. *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025). Further, "[s]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (cleaned up).

For privacy-based claims, courts identify the closest common law analogs as "reputation harms, disclosure of private information, and intrusion upon seclusion." *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022). These torts require that the subject information disclosed is "highly offensive to a reasonable person" and that plaintiffs "identify the *specific* information allegedly disclosed." *Id.*; *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (emphasis in original). For claims of alleged improper disclosure of data to third parties, plaintiffs must plead and prove that (a) the data is sensitive, (b) the use or disclosure is "highly offensive"; (c) the data is individually identifiable to them; and (d) they maintained a reasonable expectation of privacy in the data. *Ingraham v. Capital One Financial*

*Corp.*, No. 24-cv-05985, 2026 WL 1755170, at *4 (N.D. Cal. May 22, 2026) (cleaned up) (citing *inter alia, Popa*, 153 F.4th at 790).

Applying these principles, the Ninth Circuit in *Popa* held that allegations of routine website data collection—without allegations identifying the "embarrassing, invasive, or otherwise private information collected"—was insufficient to confer standing. 153 F.4th at 791. The Ninth Circuit explained that the monitoring of user activity in an online store is analogous to "a store clerk's observing shoppers." *Id*. Consistent with that reasoning, *Khamooshi* dismissed similar claims for lack of standing where the plaintiff alleged collection of "device type, browser type, and 'device fingerprints,'" finding those allegations "even less specific" than the categories identified in *Popa* and noting that while "some types of browsing activity implicate protectable privacy interests, others do not." 2025 WL 2822879, at *3.

Here, Plaintiffs' allegations are weaker than those found insufficient in *Popa* and *Khamooshi*. Each named Plaintiff alleges only that HP's Tracking Tools "intercepted, recorded, and transmitted" their "browsing activity, device identifiers, and related metadata" during routine visits to browse printers, copiers, cartridges, and laptops on the Website. Am. Compl. ¶¶ 16, 18, 22, 24, 26. Not one Plaintiff identifies a single item of embarrassing, intimate, or otherwise sensitive information actually collected, or any item that is "individually identifiable" to them at all.

The more recent case of *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *1 (C.D. Cal. April 1, 2026), reinforces this point where plaintiffs' claims sound in fraud. There, plaintiff alleged that a gift-card website used third-party tracking cookies despite her selection of "required only" cookies, enabling data brokers and advertising platforms to collect browsing history, device information, and geolocation data. *Id.* The court dismissed for lack of standing, holding that the plaintiff identified "no embarrassing, invasive, or otherwise private information" and the tracking amounted to merely "informing a third party about Plaintiff's interactions with its website." *Id.* at *5. The court found deficient the complaint's "vague and generalized allegations of the type of data the [tracking software] is capable of collecting[,]" and lacking specific allegations about what data was actually collected from the plaintiff's device and how it was used. *Id.* at *6. As for alleged misrepresentations in the site's consent banner, *Garcia*

explained that a defendant's misrepresentation about tracking goes only to the "reasonable expectation of privacy" element, and does not satisfy the separate "highly offensive" element. 2026 WL 925028, at *5; *see also Popa,* 153 F.4th at 792.

Plaintiffs' Amended Complaint similarly falls short. The allegation that HP may have tracked users despite their cookie preferences does not transform routine commercial browsing data into the kind of intimate information, the collection of which would be highly offensive. Because the Amended Complaint fails to identify any individually sensitive data, the collection of which would be "highly offensive to a reasonable person," they have not alleged a concrete injury bearing a close relationship to a traditionally recognized harm, as is necessary to support Article III standing. It follows that the Amended Complaint should be dismissed under Rule 12(b)(1).

### B. Plaintiffs Fail to State a Claim.

#### 1. Plaintiffs Fail to State a Claim under CIPA § 631 and the ECPA.

##### a. Plaintiffs' CIPA § 631 and ECPA Claims Are Deficient.

Under CIPA § 631, it is unlawful to (1) "intentionally tap[] . . . any telegraph or telephone wire, line, cable, or instrument"; to (2) "willfully and without the consent of all parties to the communication . . . read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; to (3) "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or (4) to "aid[], agree[] with, employ[], or conspire[] with any person" to do any of those things. Cal. Penal Code § 631(a). Plaintiffs assert violations of CIPA § 631 and the ECPA on the theory that HP "read or attempted to read or learn the contents" of electronic communications "contemporaneous" with the communications' transit, and "aided, agreed with, conspired with, and employed" third-party "Tracking Entities" to implement "Tracking Tools." Am. Compl. ¶¶ 273, 308. Both claims fail for the same reasons.[1]

[1] Courts routinely analyze violations of CIPA § 631 and the ECPA together because "analysis for a violation of CIPA is the same as that under the [ECPA]." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (citation omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (same).

**i. Plaintiffs Fail to Allege the Interception of "Contents."**

Both CIPA and the ECPA define "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).[2] The Ninth Circuit has explained that this definition refers to "the intended message conveyed by the communication," and "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Consistent with this distinction, courts have held in analogous website-tracking cases that protected "contents" encompass the internal, user-generated substance of a communication, whereas unprotected record information includes routing data, identifiers, and technical information reflecting how a communication is transmitted. *See Katz-Lacabe v. Oracle Am. Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (finding "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" are not content information); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1084–85 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information . . . [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "contents" under Section 631(a)). Accordingly, to state a claim under either statute, Plaintiffs must plausibly allege interception of information concerning the substance or meaning of a communication—not merely technical identifiers, behavioral data, or metadata generated as a byproduct of transmission. *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023).

The Amended Complaint does not meet this standard, as it alleges only interception of browsing activity, device identifiers, and related metadata. Am. Compl. ¶¶ 16, 18, 20, 22, 24, 26, 81, 284, 295. Courts have consistently held that such information does not constitute "contents." *See Mikulsky*, 713 F. Supp. 3d at 845 (finding allegations concerning "button clicks, mouse movements, scrolling, resizing, touches on mobile browsers, key presses, page navigation," and

[2] Because courts analyze CIPA § 631(a) using the same framework applied to the ECPA, this definition applies with equal force under both statutes. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 840 (S.D. Cal. 2024) ("Courts analyzing CIPA claims apply the same definitions for the [ECPA] where appropriate.") (citation omitted).

similar data describe non-content record information); *Yoon*, 549 F. Supp. 3d at 1082–83 (collecting cases)(holding that IP addresses, URLs, location data, browser type, operating system, and similar information are not "contents"). Moreover, the allegations as to each named plaintiff are materially identical, asserting only that "browsing activity, device identifiers, and related metadata" were "intercepted, recorded, and transmitted." Am. Compl. ¶¶ 16, 18, 20, 22, 24, 26. These boilerplate recitals do not plausibly allege interception of the substance, purport, or meaning of any communication.

The more granular categories identified in the Amended Complaint fare no better. Plaintiffs allege the collection of network requests, including "[r]equest URLs containing the names and file locations of webpages, products users browsed on the Website, . . . cookies, [and] user activity information [reflecting] commercial activity." Am. Compl. ¶ 217. But courts have consistently treated URLs, cookies, session identifiers, and similar data as routing or addressing information—not message content. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023); *Mikulsky*, 713 F. Supp. 3d at 841–42. Cookie values and session identifiers likewise reflect session management and user-matching functions, not the substance of any communication. These allegations therefore describe non-substantive record information outside the scope of both statutes.

The closest Plaintiffs come to alleging interception of actual contents is their assertion that the TTD Pixel "is configured to covertly intercept Search Terms after a user submits those terms through the Website's search bar and before the resulting search responses are transmitted to and loaded on the user's device. . . thereby capturing the contents of the user's search communications in transit." Am. Compl. ¶ 186. Under certain circumstances, a descriptive search term may qualify as a user communication and thus constitute contents. *See Zynga*, 750 F.3d at 1108–09. Yet the Amended Complaint pleads this theory only at a high level of generality. No named Plaintiff identifies a specific instance in which they personally submitted a search query that was captured in transit by the TTD Pixel—a fatal omission. *See King v. Hard Rock Cafe Int'l (USA) Inc.*, No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419, at *3–5 (dismissing CIPA § 631(a) claim where plaintiff failed to identify with specificity what information she personally provided).

Because the Amended Complaint does not identify any intercepted data reflecting the "substance, purport, or meaning" of a protected communication—and instead relies on generic behavioral data allegations indistinguishable from those rejected in *Mikulsky* and *Yoon*—Counts I and IV fail at the threshold.

**ii. Plaintiffs Fail to Allege Any Contents Were Intercepted "In Transit."**

Even if Plaintiffs adequately alleged the collection of "contents," both CIPA § 631(a) and the ECPA require interception while a communication is in transit. *See* Cal. Penal Code § 631(a); 18 U.S.C. §§ 2511(1)(a)–(d); *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021). Courts in the Ninth Circuit interpret the "in transit" requirement narrowly to mean acquisition contemporaneous with transmission. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *see also Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023). Thus, the alleged interception must occur "in real time," at the moment the communication is transmitted. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). Conclusory assertions of contemporaneity are insufficient. *See In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226, 1228 (C.D. Cal. 2017); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022).

Here, Plaintiffs allege that "[t]he Tracking Tools intercepted the contents of Plaintiffs' communications contemporaneously with Plaintiffs' interactions with the Website" and that this "interception, duplication, and transmission occurred inside Plaintiffs' browsers . . . while the communications were in transit." Am. Compl. ¶¶ 218–19. Despite their length, these allegations merely restate the statutory element without meaningful factual detail. *See Rodriguez*, 2022 WL 214552, at *2 ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [defendant] is intercepting [plaintiff's] data in transit."). Courts have rejected materially identical allegations as insufficient. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (finding similar assertions did "little more than restate the pleading requirement"); *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d at 1085 (same).

As in those cases, the Amended Complaint does not explain how any Tracking Tool intercepts communications or how such interception plausibly occurs in real time.

In a footnote, the Amended Complaint nods to this critical element, alleging that "unless a software command, like a Tracking Tool, is physically last to arrive at a device, it is loaded and executed before the communication has finished being received." Am. Compl. ¶ 41 n.14. This below-the-line allegation as to how software generally operates does not suffice, particularly as it is untethered to any specific Tracking Tool, webpage, or code implementation, much less any Plaintiff's alleged experience. A generalized hypothesis about software behavior is not a factual allegation that a particular interception occurred contemporaneously with a specific Plaintiff's communication in transit. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (dismissing in-transit claim as to Google Pixel for lack of allegations as to contemporaneous interception).

Accordingly, Plaintiffs' conclusory in-transit allegations fail to allege the contemporaneous-interception requirement, and Counts I and IV fail on this independent ground.

**iii. Plaintiffs' Claims Fail Because HP Was a Party to the Alleged Communications.**

Plaintiffs' ECPA claim fails because the statute does not apply where "one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Plaintiffs' CIPA claim separately fails because HP was a party to the alleged communications and Plaintiffs do not plausibly allege that any third-party vendor functioned as an independent eavesdropper. *See Williams v. What If Holdings LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2–4 (N.D. Cal. 2022) (dismissing CIPA § 631(a) claims where, "[a]s the website owner, [defendant] was the intended recipient of plaintiff's communication," and the defendant's data collection software "functioned as a recorder, and not an eavesdropper").

Here, HP is plainly a party to the communications at issue. Plaintiffs allege that they communicated with HP "via the Website" and that their "electronic communications with the Website" were intercepted. Am. Compl. ¶¶ 273, 276, 284. When users browse pages, submit

searches, or interact with site features, they communicate directly with the website operator—the intended recipient. Courts have consistently held that a website owner is a party to such communications and falls within the party exception. *See Williams*, 2022 WL 17869275, at *2–4; *Valenzuela*, 674 F. Supp. 3d at 760.

Plaintiffs' attempts to avoid the exception are unavailing. They allege that Tracking Entities are not mere passive tools but independently use collected data. Am. Compl. ¶ 72. But the party exception turns on the party's purpose in permitting the alleged interception, not downstream uses by third parties. Sharing data with a third party does not negate the exception unless the interception itself was undertaken for the purpose of committing a crime or tort. 18 U.S.C. § 2511(2)(d). The Amended Complaint fails to allege a crime-tort purpose, asserting only that HP acted to monetize user data for advertising and analytics. Am. Compl. ¶¶ 51, 273. These are ordinary commercial purposes, not tortious ones, and Courts have consistently held that commercial motivation alone is insufficient to invoke the crime-tort exception. *See Valenzuela*, 674 F. Supp. 3d at 760; *cf. Yoon*, 549 F. Supp. 3d at 1081 (claim survived where vendor allegedly captured, stored, and interpreted real-time data beyond the ordinary function of a tape recorder).

Because HP is a party to the communications and Plaintiffs do not plausibly allege interception for a criminal or tortious purpose, the CIPA and ECPA claims fail.

**b. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Is Deficient.**

CIPA § 638.51(a) prohibits a person from "install[ing] or us[ing] a pen register or trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A "trap and trace device" is similarly defined as a device or process that "captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information" but, again, "not the contents of a communication." Cal. Penal Code § 638.50(c).

The plain language of the statute and legislative history establish that CIPA § 638.51(a)'s pen register restrictions apply only to communications through a telegraph or telephone. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021) (finding the Legislature's intent evidenced through their amendments to CIPA "to take account of privacy issues raised by increased use of cellular and cordless telephones"); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (finding legislative history of CIPA suggests "pen register" and "track and trace devices" refer to devices or processes used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites). In fact, the California Legislature amended CIPA § 638 as recently as 2015, adopting the same authorization provision in CIPA § 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. *See* Cal. Penal Code § 638.52(d)(1), (3) (requiring court order to identify the person "in whose name . . . the telephone line to which the pen register . . . is to be attached"); *Casillas v. Transitions Optical, Inc.*, No. 23STCV30724, 2024 WL 4873370, at *4 (Cal. Super. Sept. 9, 2024) ("[A]n internet user generates the IP address data . . . only by making the affirmative decisions to access a website or application. . . . The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them.")(citation omitted).

The recent decision in *Rodriguez v. Ink America International Group LLC* confirms that § 638.51 cannot be extended to encompass website tracking technologies. No. 24STCV24953, 2025 WL 4034985, at *1 (Cal. Super. Dec. 10, 2025). There, the plaintiff alleged that third-party pixels and analytics tools functioned as "pen registers" or "trap and trace devices." *Id.* at *1. After analyzing the statute's text, structure, and history, the court held that these provisions were directed at "telephonic-style surveillance," not "routine operation of commercial websites or analytical software." *Id.* at *3. The court reiterated that the statute "did not, and does not, criminalize the process by which websites communicate with users who choose to access them," and entered judgment on the pleadings without leave to amend. *Id.* at *4–5. It further reasoned that extending § 638.51 to ordinary website analytics would conflict with the CCPA's regulatory framework,

which contemplates notice and opt-out mechanisms rather than court-ordered authorization. *Id.* at *3–4.

Plaintiffs' Amended Complaint is materially indistinguishable from *Rodriguez.* Plaintiffs allege that the Tracking Tools "identify the source of electronic communication" by capturing "IP addresses, detailed URLs, cookies, and Pixel IDs" and that "no court order to install a trap and trace device via the Tracking Tools was obtained by [HP]." Am. Compl. ¶¶ 233–34, 236. Count V further alleges that HP's website "deploy[ed] Tracking Tools" functioning as "pen register and trap and trace processes" to capture "phone numbers, email addresses, routing information, addresses, and other signaling information" without a court order or user consent. *Id.* ¶ 318. These are precisely the categories of data generated through routine website access that *Rodriguez* held fall outside § 638.51's intended scope. As such, the use of cookies, pixels, and analytics tools on a commercial website is not the installation of a "pen register" or "trap and trace device" but the ordinary operation of an e-commerce platform.

Plaintiffs' claim also fails for the independent reason that pen registers and trap and trace devices, by statutory definition, do not capture the "contents" of a communication. Cal. Penal Code § 638.50(b)–(c). As courts have recognized, this creates a fundamental incompatibility with allegations that tracking technologies intercept substantive communications. In *Mitchener v. CuriosityStream, Inc.*, Judge Wise explained that a "trap and trace device" by statutory definition "captures identifying information ***about*** a communication ***but not the contents*** of a communication." 815 F. Supp. 3d 845, 851 (N.D. Cal. 2025) (internal quotation marks and citation omitted) (emphasis in original); *see also Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) (same). Judge Wise dismissed with prejudice the CIPA trap-and-trace claims based on software code embedded on the defendant's website, finding that if the code collected content it would fall outside the statutory definition, and if it collected only metadata such as IP addresses the plaintiff would lack any cognizable privacy interest. *See Mitchener*, 815 F. Supp. 3d at 851; *Kishnani*, 2025 WL 1745726, at *4. *Rodriguez* reached the

same conclusion, emphasizing that a plaintiff cannot simultaneously allege interception of "contents" and operation of a pen register or trap and trace device. 2025 WL 4034985, at *4.

Plaintiffs plead both theories here, but they cannot be reconciled. In Counts I and IV, Plaintiffs allege that the Tracking Tools intercepted the "contents" of communications, including URLs that purportedly "reflect the substance of a user's communication," and that these contents were copied and transmitted to third parties. Am. Compl. ¶¶ 216, 260–79, 301–310. Plaintiffs also allege that the Tracking Tools "intercept[] communications," "cop[y] the contents of those communications," and generate new Request URLs sent to Tracking Entities. *Id.* ¶ 73. If these allegations are accepted, the Tracking Tools capture content and therefore fall outside the statutory definitions in § 638.50. Conversely, if the tools capture only non-content data such as IP addresses, cookie identifiers, pixel IDs, and routing information, courts have consistently held that such collection does not implicate a protectable privacy interest. *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (finding no protectable privacy interest in IP addresses)*; Palacios v. Office Depot, LLC*, No. 24STCV11977, 2024 WL 7006626, at *3 (Cal. Super. Dec. 4, 2024) (dismissing similar claim for lack of statutory injury based on IP address collection). Under either theory, Plaintiffs fail to state a claim under § 638.51.

Finally, as with Plaintiffs' wiretap claim, Plaintiffs have not adequately alleged scienter. Because CIPA is a criminal statute, Plaintiffs must plead that HP acted with knowledge and intent. *See Heiting*, 709 F. Supp. 3d at 1019; *see also* Cal. Penal Code § 20 (scienter). This requires allegations that HP installed the challenged technologies with the intent that they would engage in unlawful interception or misconduct. *See Heiting*, 709 F. Supp. 3d at 1019. Here, Plaintiffs do not—and cannot—allege that HP had any intent to engage in or further any third party's criminal activity, and their failure to do so is fatal to their CIPA § 638.51 claim.

### 2. Plaintiffs Fail to State a Claim for Invasion of Privacy.

"The California Constitution and the common law set a high bar for an invasion of privacy claim" *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Where, as here, constitutional and common law claims are brought together, "courts conduct a combined inquiry that considers (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the

offensiveness or seriousness of the intrusion." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) (cleaned up). "The gravamen" of the claim "is the mental anguish sustained when both conditions of liability exist." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Neither element exists here.

"Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (collecting cases). The information Plaintiffs identify in the Amended Complaint—browsing activity, URLs, IP addresses, cookie data, device identifiers, and similar metadata—reflects the type of information routinely generated and exchanged during ordinary internet use. Plaintiffs themselves define "Sensitive Information" to include "detailed interaction and behavioral data," "persistent identifiers that enable recognition of users across sessions and websites," "email addresses," and "approximate geolocation derived from IP addresses." Am. Compl. ¶ 7. But these categories are not akin to the types of highly personal or confidential information that courts have found support a reasonable expectation of privacy online.

Instead, "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original). Plaintiffs' own allegations confirm that the challenged conduct falls squarely within this ordinary course. Each named Plaintiff alleges that HP's Tracking Tools "intercepted, recorded, and transmitted" their "browsing activity, device identifiers, and related metadata" to Tracking Entities. Am. Compl. ¶¶ 16, 18, 20, 22, 24, 26. These allegations describe the routine operation of modern websites and nothing more.

Nor do Plaintiffs' allegations regarding HP's consent banner disclosures alter that conclusion. The Amended Complaint reproduces the consent banner and related interface, which disclose that the Website uses cookies and other technologies for functionality, personalization, analytics, and advertising, and provide users with tools to manage those settings. Am. Compl. ¶¶ 59–62. The Amended Complaint further alleges that the banner varied by location, including

versions where continued use of the site or closing the banner constituted agreement, and another where sharing occurred by clicking "Accept." *Id.* ¶ 68. Indeed, the banners varied by location to reflect jurisdiction-specific disclosure requirements, underscoring a focus on regulatory compliance rather than any malicious intent.[3] The allegations in the Amended Complaint describe a disclosure framework informing users that tracking occurs and offering varying degrees of control, not a representation that all data collection will cease. A user who is expressly informed that a website uses tracking technologies for multiple purposes cannot reasonably expect the complete absence of such tracking. At most, the allegations reflect that users could adjust certain preferences, not that the Website would operate without collecting routine browsing and device-related data.

Plaintiffs also fail to allege any use of their information "in a manner highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286. This is a demanding standard, requiring "an exceptional kind of prying into another's private affairs," such as "taking the photograph of a woman in the hospital with a 'rare disease that arouses public curiosity.'" *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002). Conduct undertaken for "legitimate business reasons," as opposed to "socially repugnant . . . reasons," does not meet that threshold. *Hernandez*, 47 Cal. 4th at 286, 297.

Here, Plaintiffs allege only that HP deployed the challenged Tracking Tools for website analytics and marketing purposes. Am. Compl. ¶¶ 53, 275. Those alleged purposes are quintessentially commercial and routinely recognized as legitimate business functions, not "socially repugnant" conduct. Courts in this Circuit consistently reject privacy claims based on materially indistinguishable allegations. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d

[3] These variations are further explained in HP's online privacy statement as follows: "In addition to the rights described in the Exercising Your Rights & Contacting Us section of this Privacy Statement, California Colorado, Connecticut, Virginia, Utah, Florida, Oregon, Texas, Montana, Delaware, Iowa, Nebraska, New Hampshire, New Jersey, Tennessee, Minnesota, Maryland, Indiana, Kentucky and Rhode Island privacy laws permit their respective residents to request us to stop selling or sharing their personal data with third parties or for those purposes allowed by local law. If you are a resident of such states, this section applies to any personal data that we collect about you in accordance with your respective state's privacy laws." *HP US Privacy Statement*, HP Inc. (last visited June 29, 2026), https://www.hp.com/us-en/privacy/privacy.html.

1033, 1047 (N.D. Cal. 2025) (disclosure of employment information, account information, and credit card eligibility does not constitute an "egregious breach of social norms"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) ("Even disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy"); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (no privacy claim based on disclosure of "unique device identifier number, personal data, and geolocation information" without users' "knowledge and consent").

Because Plaintiffs allege only the collection of routine internet data disclosed in the context of ordinary website functionality, and identify no conduct that rises to the level of a highly offensive intrusion, they fail to satisfy either element of their privacy claim.

**3. Plaintiffs' Fraud Claims Fail Under Rule 9(b).**

Counts VI, VII, and IX of the Amended Complaint assert claims for deceptive trade practices under New York law on behalf of Plaintiff Houseman and the New York Subclass, along with common law fraud, deceit, and/or misrepresentation against HP on behalf of all Plaintiffs and the Nationwide Classes, with each Plaintiff invoking the law of his or her state of residence as to the latter. The claims rest on the theory that HP made affirmative representations through its cookie banner, cookie preferences interface, and related disclosures that users could opt out of the sale or sharing of personal information and decline non-essential cookies, and that doing so would prevent the deployment of non-essential Tracking Tools and the transmission of user data to Tracking Entities. The Amended Complaint alleges these representations were false because Tracking Tools allegedly operated even where users declined non-essential cookies or before users could exercise any choice. The claims fail for three independent reasons.

**a. Plaintiffs Fail to Plead Fraud with Particularity.**

To state a claim for common law fraud, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). In federal court, those elements must be pled with particularity under Rule 9(b), which requires the plaintiff to allege "the who, what, when,

where, and how of the misconduct alleged." *Id.* This heightened standard exists to "provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Id.* at 1125 (internal quotation marks omitted).

The Amended Complaint does not satisfy this standard. Each named Plaintiff alleges, in substantially identical terms, that he or she visited the Website, encountered a cookie banner, and either declined non-essential cookies or interacted with the Cookie Settings. *See generally* Am. Compl. ¶¶ 9, 15–25. These allegations lack the specificity Rule 9(b) requires. For instance, the Amended Complaint does not identify when any Plaintiff visited the Website, what specific version of the cookie banner was displayed on that date, what specific representations were made to each Plaintiff, what Tracking Tools were allegedly deployed on each Plaintiff's device, what data was transmitted, to which Tracking Entities it was sent, or how any such conduct was inconsistent with the representations allegedly made. While Plaintiffs attempt to offer some individualized allegations—for example, that Plaintiff Ianozi visited "in or about August 2025" to browse printer cartridges and laptops, that Plaintiff Houseman visited "in or about February 2025" to review copier product information, and that some Plaintiffs affirmatively declined cookies while others simply refrained from clicking "Accept"—these token differences do not supply the missing particulars required under Rule 9(b). *See Kearns*, 567 F.3d at 1126 (dismissing fraud claim where plaintiff failed to adequately plead "when he was exposed to" allegedly fraudulent representations); *Wiley v. Universal Music Group*, No. 25-cv-03095-PCP, 2025 WL 3654085, at *10 (N.D. Cal. Dec. 17, 2025) (dismissing fraud claim where plaintiffs pled only that they visited certain websites "at some unspecified point").

By omitting the basic details necessary to tie any alleged representation to any specific Plaintiff and any specific conduct, the Amended Complaint fails to satisfy Rule 9(b).

**b. Plaintiffs Wheeler and Sorkin Cannot Allege Justifiable Reliance.**

The fraud claim independently fails as to Plaintiffs Wheeler and Sorkin because neither alleges facts supporting justifiable reliance. Justifiable reliance is an essential element of fraud and

a plaintiff must allege that he or she actually relied on a specific representation and that such reliance was reasonable. *See Kearns*, 567 F.3d at 1126. A plaintiff who does not interact with, act on, or is not exposed to an alleged representation cannot plausibly allege that the representation induced any action or inaction to his or her detriment. *See White v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-04048-SVK, 2020 WL 13578444, at *9 (N.D. Cal. Nov. 17, 2020) (holding that plaintiff lacked standing to pursue fraud claims where he was not exposed to the "specified [website] representations upon which his claims rely").

Here, Wheeler and Sorkin allege no such interaction. They did not click "Accept," did not click "Reject," did not access the Cookie Settings, and did not make any selection regarding tracking preferences. *See* Am. Compl. ¶¶ 17, 19. Instead, they proceeded to browse the Website without engaging with the banner at all. Their theory that they somehow "relied" on a representation they did not act upon is not plausible. A disclosure that presents users with options for managing cookies cannot form the basis of a reliance theory for users who chose not to exercise any of those options. This deficiency is fatal to the fraud claim as to Wheeler and Sorkin.

**c. Plaintiffs Fail to Adequately Allege Scienter.**

Even as to those Plaintiffs who did interact with the cookie banner, the Amended Complaint fails to adequately allege scienter—i.e., that HP knew its representations were false or acted with reckless disregard for their truth. *See Kearns*, 567 F.3d at 1126 (knowledge of falsity or scienter is required for fraud claims under California law). Although Rule 9(b) permits scienter to be alleged "generally," Fed. R. Civ. P. 9(b), plaintiffs must still allege facts sufficient to support a plausible inference of knowledge or reckless disregard. *United States v. Corinthian Colleges*, 655 F.3d 984, 996–97 (9th Cir. 2011).

Here, the principal scienter allegation appears in paragraph 369 of the Amended Complaint, which asserts: "[HP] knew the representations were false or misleading, or acted with reckless disregard for their truth, because [HP] controlled the Website's source code, selected and configured the Tracking Tools, and determined how those tools operated in relation to users' expressed privacy choices." The conclusory assertion that HP "controlled" its own source code does not support a plausible inference of knowledge or falsity, since every website operator in some

sense can be considered to "control" its own web properties website code. That fact does not establish that HP knew and intended that certain Tracking Tools continue to operate contrary to user elections, particularly where the Amended Complaint itself acknowledges the complexity of modern web architectures. Paragraph 371 likewise fails to cure this defect, alleging that "[HP] made misrepresentations with the intent to induce reliance by users, including Plaintiffs, by reassuring them that they could meaningfully control tracking while [HP] continued to collect and transmit data for its own commercial benefit." This is a conclusory recitation of the elements of fraud, not a factual allegation. It offers no facts from which the Court could plausibly infer that HP knew any representation was false or deliberately designed to mislead. *See Corinthian Colleges*, 655 F.3d at 996–97 (plaintiff must allege sufficient facts supporting plausible inference of fraudulent intent).

Accordingly, conclusory assertions that HP "knew" because it "controlled" its source code—without any allegations of internal communications, testing results, audits, complaints, or other indicia of actual knowledge—are insufficient.

#### 4. Plaintiffs' Unjust Enrichment Claim Fails.

As it pertains to the California-based allegations, Plaintiffs' unjust enrichment claim fails because "there is no cause of action in California labeled unjust enrichment." *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206 (2023) (quotation marks omitted); *Brodsky*, 445 F. Supp. 3d at 132 ("California does not recognize a separate cause of action for unjust enrichment."). Unjust enrichment is a remedy available where the remedies at law are inadequate. *See Shah*, 768 F. Supp. 3d at 1051; *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."). "As a result, courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d at 132 (citing *Low*, 900 F. Supp. 2d at 1031); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010). Because all of Plaintiffs' substantive claims fail, they "ha[ve] no viable basis for invoking entitlement to . . . unjust enrichment." *Forouzesh v. Starbucks Corp.*, No. CV 16-3830 PA (AGRX), 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016).

**5. Plaintiff Houseman's New York Statutory Claims Fail.**

Plaintiff Houseman brings three New York state law claims on behalf of himself and the New York Subclass: deceptive business practices under New York General Business Law ("GBL") § 349 (Count VI); false advertising under GBL § 350 (Count VII); and violation of New York Civil Rights Law §§ 50–51 (Count VIII). Am. Compl. ¶¶ 322–362. Each claim fails as a matter of law.

**a. Plaintiff Houseman's N.Y. GBL § 349 Claim Is Deficient.**

GBL § 349 makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." To prevail on a GBL § 349 claim, a plaintiff must plead three elements: "first, that the challenged act or practice was consumer-oriented; second that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Bildstein v. MasterCard Intern. Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) (internal quotation omitted). As to the third element, "[a] plaintiff must plead facts showing actual injury, not merely the alleged deceptive act." *BMaddox Enterprises LLC v. Milad Oskouie, Osko M Ltd.*, No. 17-CV-1889 (RA), 2021 WL 3675072, at *13 (S.D.N.Y. Aug. 18, 2021); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) ("[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm."). "Accordingly, 'allegations of consumer confusion are generally not sufficient consumer harm to state a section 349 claim.'" *Id.* (internal quotation omitted).

Here, Plaintiff Houseman alleges that HP's conduct caused him and the New York Subclass Members to "suffer injury in the form of actual damages, including the *loss of control* and value of their Sensitive Information and the unauthorized disclosure of Sensitive Information to Tracking Entities[.]" Am. Compl. ¶ 331 (emphasis added). But GBL § 349 requires a plaintiff to plead an "actual injury" caused by the alleged deceptive practice—simply alleging "loss of control and value" of personal information is conclusory and does not identify any concrete economic loss or misuse of information that sufficiently connects the alleged deceptive practice to an actual injury. *See BMaddox*, 2021 WL 3675072, at *13–14 (dismissing GBL § 349 claim where plaintiff made only conclusory allegations of injury to "reputation and monetary damages" without evidence); *see also Warren v. Mariner Finance, LLC*, No. 16-CV-221, 2020 WL 4676658, at *7 (W.D.N.Y. Aug.

12, 2020) (dismissing GBL § 349 claim where plaintiff failed to connect any alleged reputational or monetary injuries to defendant's use of small print in loan documents or defendant's failure to generally disclose relevant information); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 544 (S.D.N.Y. 2018) (dismissing GBL § 349 claim where plaintiffs failed to offer facts connecting reputational harm and lost business to defendant's alleged misrepresentation on its website).

Multiple cases reject speculative or conclusory injury theories where the plaintiff does not plead actual misuse, unreimbursed financial loss, or facts showing that the information lost measurable value. *See Whalen v. Michaels Stores, Inc.*, 153 F. Supp. 3d 577, 579–583 (E.D.N.Y. 2015) (finding no Article III standing to sustain GBL § 349 claim where plaintiff alleged attempted fraudulent use of credit card information, but no approved charged, loss, or non-speculative future harm). Although some tracking-pixel cases have allowed GBL § 349 claims to proceed where plaintiffs pled specific misrepresentations, *see Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *1 (W.D.N.Y. Mar. 19, 2024), Plaintiff Houseman pleads no comparable facts. Rather, he alleges only that he "visited the Website in or about February 2025 for consumer browsing purposes," "reviewed product information regarding copiers," and that HP transmitted his "browsing activity, device identifiers, and related metadata" via Tracking Tools. Am. Compl. ¶¶ 23–24. Standing alone, the transmission of browsing activity and device identifiers from a commercial website does not establish that any "actual" or concrete harm was done. As such, the "loss of control" theory is precisely the kind of abstract, speculative injury that New York courts have found insufficient to sustain a GBL § 349 claim.

**b. Plaintiff Houseman's N.Y. GBL § 350 Claim Is Deficient.**

GBL § 350 makes it unlawful to engage in "[f]alse advertising in the conduct of any business, trade, or commerce in the furnishing of any service." The statute defines "false advertising" as "advertising, including labeling" that is "misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. To prevail on a GBL § 350 claim, a plaintiff must plead the same three elements required under GBL § 349. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *see also Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (2002) (§ 350 is "specific to false advertising" but otherwise follows § 349's recovery standard).

Here, the threshold defect in Plaintiff Houseman's § 350 claim is that HP's cookie banner and Cookie Settings interface on the Website do not qualify as "advertising" within the meaning of the statute.[4] Rather, they are disclosure mechanisms—i.e., a  tool designed to inform users about cookie usage and offer options regarding data collection. They do not promote HP products, describe product attributes, advertise pricing, offer benefits, or solicit the purchase of goods or services. Courts have dismissed analogous § 350 claims based on alleged privacy-policy omissions where the plaintiff cited "no case law demonstrating that a privacy policy can constitute advertising." *Cohen v. Casper Sleep Inc.*, Nos. 17cv9325, 17cv9389, 17cv9391, 2018 WL 3392877, at *9 (S.D.N.Y. July 12, 2018). Plaintiff Houseman's allegation that Tracking Entities later used identifiers "for targeted online advertising and other commercial purposes" does not change the analysis. *See* Am. Compl. ¶ 353. GBL § 350 asks whether the challenged representation itself is false advertising—a privacy disclosure does not become an advertisement merely because data collected after the disclosure may later be used for advertising. *See Reit v. Yelp!, Inc.*, 807 N.Y.S.2d 411, 415 (N.Y. Sup. Ct. 2010) (distinguishing consumer-directed promotional representations from operational or business conduct that may have downstream commercial effects).

Plaintiff Houseman's remaining allegation that "[HP] knew or should have known that its representations regarding users' ability to control the [use] of their Sensitive Information were false or misleading" goes to the alleged falsity of the representation, not to whether the representation satisfies the definition of "advertising." Am. Compl. ¶ 339. Even crediting this allegation as true, Plaintiff Houseman has failed to identify any consumer-oriented "advertising" within the meaning of GBL § 350. As such, a cookie banner and Cookie Settings interface that discloses data-privacy practices and offers consent options is a regulatory compliance tool, not a product advertisement, to which a claim under GBL § 350 does not extend.

[4] Plaintiff Houseman's GBL § 350 claim also fails to satisfy the third element, which requires "actual injury" resulting from the allegedly deceptive act or practice. The analysis of Plaintiff Houseman's failure to plead this element is identical to the analysis under GBL § 349, *see* Section IV.B.5.a., *infra*, and is omitted here for the sake of brevity and to avoid repetition.

**c. Plaintiffs' N.Y. Civil Rights Law §§ 50 and 51 Claim is Deficient.**

N.Y. Civil Rights Law § 51 provides a private right of action for any person whose "name, portrait, picture, or voice" is used for "advertising purposes or for the purposes of trade" without written consent. N.Y. Civ. Rights Law § 51; *see also* N.Y. Civ. Rights Law § 50 (making such use a misdemeanor). To prevail on a § 51 claim, "a plaintiff must prove: (1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York." *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 120 (2018) (internal quotation omitted). The statutes were "drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more." *Id.* As such, §§ 50–51 are not general data-privacy laws, and they do not apply to the conduct alleged here.

Here, the threshold defect in Plaintiff Houseman's §§ 50–51 claim is that the alleged transmission of a Facebook ID ("FID")—a numerical identifier stored in the c_user cookie—does not involve the use of a protected "name, portrait, picture, or voice" within the meaning of the statute. Plaintiff Houseman alleges that he and the New York Subclass Members "have a statutory privacy interest in their names, portraits, pictures, and voices under New York law," and that HP "transmitted Plaintiff Houseman's and the New York Subclass Members' Sensitive Information and identities, such as the FID, to Tracking Entities like Facebook for targeted online advertising and other commercial purposes." Am. Compl. ¶ 353. The claim thus rests on the theory that the FID constitutes a protected "name" or "identity" under §§ 50–51. It does not.

New York courts have interpreted §§ 50–51 narrowly, limiting the statute's reach to the misappropriation of a person's actual name, likeness, image, or voice for advertising or trade—i.e., the commercial exploitation of a person's identity in a manner that capitalizes on the person's recognizability. *See Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013) (the statute "has consistently been construed narrowly"); *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000). A numerical identifier such as the FID—a "series of numbers" contained in a cookie "to identify a user's profile," Am. Compl. ¶ 109—is a machine-readable data string, not a "name, portrait, picture, or voice." *See Lohan*, 31 N.Y.3d at 121–22 (requiring use of

a protected name, portrait, picture, or voice, and visual representation is actionable only if recognizable as the plaintiff); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982) (the Legislature "drafted narrowly" §§ 50–51 to cover only commercial use of an individual's name or likeness and did not create a broad privacy cause of action). The FID does not have independent recognizability value and does not evoke Plaintiff Houseman's persona in any commercial sense.

Plaintiff Houseman's allegation that "the FID can simply be appended to www.facebook.com/ to navigate to the user's profile," Am. Compl. ¶ 110, does not alter the analysis. The ability to link a data identifier to a person's social media profile is not the same as using that person's "name, portrait, picture, or voice" for advertising or trade. Plaintiff Houseman's theory would effectively treat any data point that could be connected to an individual through inference or database lookup as a protected attribute under §§ 50–51. That interpretation would expand a narrow commercial-misappropriation statute into a sweeping data-privacy law, contrary to the limits recognized by New York courts.

Plaintiff Houseman's damages theory further confirms the mismatch between the statute and the claim. He alleges "damage to the value of their information, which [HP] appropriated for its own enrichment." Am. Compl. ¶ 354. But §§ 50–51 protect against the commercial exploitation of identity and do not create a general remedy for the diminution in the "value" of data identifiers transmitted to analytics platforms. *See Arrington*, 55 N.Y.2d at 439 (1982); *Messenger*, 94 N.Y.2d at 441. Nor does the allegation that HP "acted knowingly when it installed the Tracking Tools onto the Website because the purpose of the Tracking Tools is to track and disseminate users' communications with the Website for the purpose of marketing and advertising", Am. Compl. ¶ 355, change that conclusion. At most, it describes data collection for analytics, not the appropriation of Plaintiff Houseman's identity for trade. Because Plaintiff Houseman does not allege that HP used his name, photograph, or likeness in any advertisement, or otherwise capitalized on any recognizable attribute of his persona, his claim falls outside the scope of §§ 50–51.

**6. Plaintiffs' Declaratory Judgment Claim Fails.**

Count XI seeks a declaratory judgment under 28 U.S.C. § 2201 on behalf of Plaintiffs and the Nationwide Class. Plaintiffs ask the Court to declare that HP owes a duty to refrain from

disclosing consumers' Sensitive Information without authorization, that HP's alleged breaches caused injury, and to impose injunctive relief requiring HP to safeguard such information. Am. Compl. ¶¶ 382–89. The claim fails for multiple independent reasons.

***First***, the Declaratory Judgment Act is purely procedural. It permits a court to "declare the rights and other legal relations" of the parties in a case of actual controversy, but it does not create an independent cause of action or substantive rights. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D. Cal. 2022) (quoting 28 U.S.C. § 2201(a)); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (Declaratory Judgment Act is procedural only and does not extend federal jurisdiction). Plaintiffs do not identify any legal duty or right distinct from those asserted in Counts I through X. Instead, Count XI merely repackages the same "common law and statutory duties" underlying Plaintiffs' ECPA, CIPA, New York statutory, fraud, and unjust enrichment claims. Because it adds no new theory of liability and seeks only duplicative relief, Count XI is redundant and should be dismissed. *Hammerling*, 615 F. Supp. 3d at 1097 (dismissing declaratory judgment claim where all underlying claims failed and declaratory relief supplied no independent basis for recovery). ***Second***, even if declaratory relief could proceed as a standalone claim, it rises and falls with the underlying substantive causes of action. *Id.* As set forth above, Plaintiffs fail to state any viable claim. Without a predicate violation, there is no "actual controversy" to support declaratory relief. *Hammerling*, 615, F. Supp. 3d at 1097. The declaratory relief Plaintiffs seek presupposes liability that has not been plausibly alleged. ***Third***, to the extent Count XI seeks forward-looking relief, Plaintiffs must demonstrate Article III standing by showing a "real and immediate" threat of future injury. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967–71 (9th Cir. 2017). As already set forth herein, Plaintiffs have failed to allege a concrete, non-speculative or conclusory harm that is sufficient to establish standing under Article III. Accordingly, Count XI should be dismissed in its entirety.

## V. CONCLUSION

For the foregoing reasons, the Court should grant HP's motion to dismiss.

Dated: July 6, 2026

K&L GATES LLP

By: */s/ Michael J. Stortz*
Michael J. Stortz
K. Taylor Yamahata

Attorneys for Defendant
HP INC.