Joseph W. Cotchett (SBN 36324)
Thomas E. Loeser (SBN 202724)
Gia Jung (SBN 340160)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
T: (650) 687-6000
F: (650) 697-0577
E: jcotchett@cpmlegal.com
E: tloeser@cpmlegal.com
E: gjung@cpmlegal.com

Eduard Korsinsky (admitted *pro hac vice)*
Mark Jensen (*pro hac vice* forthcoming)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171
E: ek@zlk.com
E: mjensen@zlk.com

*Counsel for Plaintiffs*

*[Additional counsel on signature page]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JAMES IANOZI, ROSS WHEELER, ADAM SORKIN, JENNY KOOB, JEAN HOUSEMAN, and LINAY JAMES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HP INC.,

Defendant.

Case No.: 5:26-cv-02164-PCP (VKD)

**PLAINTIFFS' OPPOSITION TO DEFENDANT HP INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT WITH MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: September 24, 2026
Time: 10:00 a.m.
Judge: Hon. P. Casey Pitts
Courtroom: Courtroom 8, 4th Floor

Complaint Filed: March 12, 2026
Am. Compl. Filed: June 5, 2026

## TABLE OF CONTENTS


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

ISSUES TO BE DECIDED ..... 3

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. The Allegations in the Amended Complaint Establish Plaintiffs' Article III Standing ..... 4

II. Plaintiffs Sufficiently Allege Claims Under CIPA and the ECPA. ..... 7

- A. Plaintiffs allege that HP intercepted content under the CIPA and ECPA. ..... 7
- B. Plaintiffs sufficiently allege tracking. ..... 9
- C. The party exception does not apply if Plaintiffs' factual allegations are accepted as true. ..... 9
- D. Plaintiffs sufficiently allege their CIPA claims. ..... 10

III. Plaintiffs Sufficiently Allege Their Claims for Invasion of Privacy and Violation of the California Constitution. ..... 11

IV. Plaintiffs Have Stated Claims for Common Law Fraud. ..... 14

- A. Plaintiffs' fraud claims are pled with sufficient particularity. ..... 15
- B. Plaintiffs Wheeler and Sorkin have adequately alleged justifiable reliance. ..... 16
- C. Plaintiffs have adequately alleged scienter. ..... 17

V. Plaintiffs Adequately Plead Unjust Enrichment. ..... 17

VI. Plaintiff Houseman's New York GBL Claims Are Adequately Pled. ..... 18

- A. Plaintiff Houseman has adequately pled actual injury to support his claim under GBL Section 349 ..... 19
- B. Plaintiff Houseman's GBL Section 350 claim is adequately pled. ..... 20

VII. Plaintiff Houseman's Claims Under New York Civil Rights Law Sections 50 and 51 Are Adequately Pled. ..... 21

VIII. Plaintiffs Have Stated Claims for Declaratory Relief. ..... 22

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 18, 20

*A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ........ 18

*Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276 (9th Cir. 2021). ........ 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 4

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ........ 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 4

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 5, 6

*Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) ........ 16

*City of Reno v. Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022) ........ 22

*D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) ........ passim

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589 (9th Cir. 2020) ........ passim

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ........ 6

*Dyke v. Zaiser*, 80 Cal. App. 2d 639 (1947) ........ 17

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ........ 18

*Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735 (W.D.N.Y. 2017) ........ 21

*Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 10

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ passim

*Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 WL 1278912 (C.D. Cal. May 5, 2026) ........ 5

*Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ........ 6, 7

*Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....... 5, 6

*Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, 2026 U.S. Dist. LEXIS 147639 (N.D. Cal. June 23, 2026) ....... 4

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....... 10

*Hassid v. Alex and Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026) ....... 10

*Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....... 11

*In re iPhone App. Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....... 14

*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) ....... 8, 10, 18, 19

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....... 14

*In the Matter of Snapchat, Inc., A Corp.*, No. 132-3078, 2014 WL 1993567 (MSNET May 8, 2014). ....... 21

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ....... 9

*Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ....... 19

*Karlin v. IVF Am., Inc.*, 690 N.Y.S.2d 495 (1999) ....... 19

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ....... 14, 15, 16

*Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ....... 6, 7

*Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452 (2012) ....... 19

*Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026) ....... 5, 6, 9, 10

*Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348 (S.D.N.Y. 2025) ....... 22

*Lohan v. Perez*, 924 F. Supp. 2d 447 (E.D.N.Y. 2013 ....... 21

*Lohan v. Take-Two Interactive Software, Inc.*, 73 N.Y.S.3d 780 (2018) ....... 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....... 4

*Luxton v. Maneuver Mktg. PTE. Ltd.*, No. 5:25-cv-04004-PCP, 2026 WL 1741450 (N.D. Cal. June 16, 2026) ....... 18

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034 (N.D. Cal. 2016) ....... 17

*Molina v. Phx. Sound, Inc.*, 747 N.Y.S.2d 227 (App. Div. 2002) .......... 22

*Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024) .......... 18

*Moody v. C2 Educational Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 10

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529 (1995) .......... 19, 20

*Palmquist v. Mercer*, 43 Cal.2d 92 (1954) .......... 17

*Patel v. Facebook*, 932 F.3d 1264 (9th Cir. 2019) .......... 4, 5

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 5, 16, 18, 20

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......... 5, 6, 7

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 10

*Roney v. Miller*, 705 F. App'x. 670 (9th Cir. 2017) .......... 23

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 14

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 10

*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 4, 6, 14, 18

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 7

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, No. 25-cv-06213-EKL, 2026 WL 1697633 (N.D. Cal. June 11, 2026) .......... 4

*Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) .......... 19

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000) .......... 20

*Taylor v. ConverseNow Techs., Inc.*, No. 25-cv-00990-SI, 2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .......... 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 4

*U.S. Dep't of Just. v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989) .......... 4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 14, 15

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 5

*Whalen v. Michaels Stores, Inc.*, 153 F. Supp. 3d 577 (E.D.N.Y. 2015)....19

*White v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-04048-SVK, 2020 WL 13578444 (N.D. Cal. Nov. 17, 2020)....16, 17

*Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121 (N.D. Cal. 2025)....passim

**Statutes**

New York General Business Law Section 349....passim

New York General Business Law Section 350....passim

New York General Business Law Section 350-a(1)....passim

**Other Authorities**

2007 N.Y. Op. Att'y Gen. No. 1 (Oct. 15, 2007).....21

**Rules**

Fed. R. Civ P. 12(b)(6)....4, 9, 11, 12

Fed. R. Civ. P. 9(b)....3, 14, 15

Plaintiffs James Ianozi, Ross Wheeler, Adam Sorkin, Jenny Koob, Jean Houseman, and Linay James ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in opposition to Defendant HP Inc.'s Motion to Dismiss the Amended Complaint (ECF No. 16) ("Mot.").

## INTRODUCTION

This putative class action arises from Defendant HP Inc's ("HP") unlawful invasions into its website users' privacy. HP operates a consumer-facing commercial website, at https://www.hp.com/us-en/home.html (the "Website"), through which users can browse and purchase products, customize computers and printers, access support services, create accounts, and explore promotional offers. Like many websites today, the Website uses third-party tracking technologies to obtain data on its users that can be used to manipulate users' purchasing decisions and online behavior, as well as obtain revenue from the sale of the data collected. The Website, however, purports to honor users' privacy preferences by giving them control over what data it collects and shares with, and/or sells to, third parties.

HP's representations about users' ability to control data collection and sharing were false. The Website deploys third-party tracking technologies immediately upon a user's initial visit to the Website, before users receive any meaningful notice or opportunity to control the interception and/or dissemination of their personal data. Further, the Website continues its surreptitious tracking practices even after users affirmatively reject the sale or sharing of their personal data.

Plaintiffs allege these practices violated the federal Wiretap Act, 18 U.S.C. § 2510, et seq.; California's Invasion of Privacy Act ("CIPA"), including California Penal Code Section 631 (illegal wiretapping) and California Penal Code Section 638.51 (unlawful use of a pen register or trap and trace device); New York's Deceptive Acts and Practices statute, the New York General Business Law ("GBL") Section 349; New York's False Advertising Law, GBL Section 350; the New York Civil Rights Law Sections 50 and 51and common law, including intrusion upon seclusion, fraud and deceit, and unjust enrichment.

HP now moves to dismiss the Amended Complaint, arguing, *inter alia*, that Plaintiffs lack standing, that Plaintiffs have failed to plead a highly offensive intrusion and a reasonable expectation of privacy, and that Plaintiffs' Wiretap and CIPA claims fail for particularity of pleading that the contents of Plaintiffs' communications were intercepted in transit. In each respect, HP's arguments fail to account

for a plethora of case law undermining its positions or ignore Plaintiffs' well-pled allegations. This Court has also already considered and rejected—in some cases repeatedly—many of the same arguments that HP raises. For the reasons explained below, HP's Motion should be denied.

## FACTUAL BACKGROUND

HP operates the Website where consumers can browse and purchase products, customize computers and printers, access support services, create accounts, and explore promotional offers. *See* ¶¶ 2, 27.[1] Upon navigating to the Website, the Website displays a cookie banner[2] ("Cookie Banner") informing users that they may control the sale and/or sharing of their personal data via the Website's cookie preferences interface ("Cookie Settings"). *See* ¶¶ 2, *Figures 1* and *2*, 3-6, 59, *Figure 8*. Several assurances and representations in the Cookie Banner are false.

First, both the Cookie Banner and the Cookie Settings represent that *before* the Website deploys third-party advertising, marketing, and analytics cookies and other tracking technologies (referred to herein as the "Tracking Tools"), users must affirmatively consent. *See* ¶¶ 2-4. HP's assurances are false: the Website deploys the Tracking Tools the moment users, such as Plaintiffs, navigate to the Website, before any opportunity to offer consent. *See* ¶¶ 3-9, 59-72, 73-212.

Second, after users expressly reject the Website's use of Tracking Tools, the Website continues to utilize and deploy Tracking Tools anyway.[3] Tracking Tools used include the New Relic Browser

---

[1] "¶" denotes the indicated paragraph(s) of the Amended Complaint (ECF No. 15).

[2] The Website's cookie banner appears differently in California and New York; however, in all instances, HP assures users that they may control the sale or sharing of their personal information and must opt in to any tracking. *See* ¶¶ 2,4.

[3] Plaintiffs make allegations about the data collected generally, as well as allegations regarding the types of data collected by each Tracking Tool. *See, e.g.*, ¶¶ 7, 79-86 (TikTok Pixel), 111-15 (Meta Pixel); 127-42 (Google Analytics); 150-58 (Reddit Pixel); 163-71 (Twitter Pixel); 179-86 (Trade Desk Pixel); 189-95 (New Relic Browser Monitoring); 201-10 (Bazaarvoice Pixel).

Monitoring and Bazaarvoice Pixel, which transmit users' Sensitive Information[4] to the advertising, social media, and analytics companies that designed and operate the Tracking Tools (the "Tracking Entities"[5]). *See* ¶¶ 5, 73-212, 238-47. As alleged, the Cookie Banner and Cookie Settings operate to deceive users, depriving them of control over their Sensitive Information and diminishing its value, so that HP can monetize that information. *See* ¶¶ 3-9, 59-74, 238-47.

Plaintiffs—residents of Delaware, Oregon, Illinois, California, and New York—each accessed the Website in or around 2025 and 2026 for ordinary consumer purposes and relied on the representations in the Cookie Banner and Cookie Settings. *See* ¶¶ 9, 15-26. Certain Plaintiffs affirmatively declined all nonessential cookies relying upon HP's representations that marketing and tracking technologies would be disabled upon rejection; others did not affirmatively accept cookies and reasonably believed that non-essential tracking would not be activated absent express consent. Despite these actions and expectations, HP deployed Tracking Tools that automatically intercepted, recorded, and transmitted Plaintiffs' Sensitive Information to the Tracking Entities. *Id.* In each instance, Plaintiffs reasonably relied on HP's representations regarding cookie controls and privacy protections, yet their Sensitive Information was nonetheless collected and shared without their valid consent. *Id.*

**ISSUES TO BE DECIDED**

- Have Plaintiffs alleged concrete injury sufficient to confer Article III Standing?
- Have Plaintiffs stated claims under the federal Wiretap Act, CIPA, GBL § 349; GBL § 350, N.Y. Civ. Rights Law §§ 50 and 51, and/or for common law, including intrusion upon seclusion, fraud and deceit, and unjust enrichment?
- Do Plaintiffs' common law fraud claims satisfy the requirements of Fed. R. Civ. P. 9(b)?

---

[4] "Sensitive Information" refers to detailed interaction and behavioral data, including users' selections of links, buttons, forms, and other on-page elements, as well as information entered into search fields. This data includes webpages and products viewed or purchased; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers such as device type, operating system, and browser type. The data also includes persistent identifiers that enable recognition of users across sessions and websites, users' email addresses, and approximate geolocation information derived from IP addresses or similar signals. ¶ 7. Certain Tracking Tools also collected additional data, like users' entries of their "names, passwords, and authentication codes." ¶ 91.

[5] The Tracking Entities include, but are not limited to, TikTok, Meta, Google, Reddit, Twitter, The Trade Desk, New Relic, and Bazaarvoice. *See* ¶¶ 73-212.

**LEGAL STANDARD**

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Examples of concrete but intangible harms include "reputational harms, *disclosure of private information*, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added). To defeat a motion under Fed. R. Civ P. 12(b)(6), "Plaintiffs must allege 'enough facts to state a claim to relief that is plausible on its face.' A claim is facially plausible when the pleaded facts allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, No. 25-cv-06213-EKL, 2026 WL 1697633, at *2 (N.D. Cal. June 11, 2026) (citations omitted) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ARGUMENT**

**I. The Allegations in the Amended Complaint Establish Plaintiffs' Article III Standing.**

"[P]rivacy encompass[es] . . . [an] individual's control of information concerning his or her person." *Patel v. Facebook*, 932 F.3d 1264, 1273 (9th Cir. 2019) (quoting *U.S. Dep't of Just. v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989)). Indeed, Courts in the Ninth Circuit consistently hold that a plaintiff establishes Article III standing where a defendant misrepresents the effectiveness of tracking consent mechanisms and, without authorization, deprives consumers of control over their personal data via tracking technology such as the Tracking Tools. *See, e.g.*, *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (Pitts, J.) ("[B]ecause a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III."); *Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, 2026 U.S. Dist. LEXIS 147639, at *12 (N.D. Cal. June 23, 2026)[6] (Pitts, J.) (similar); *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1134 (N.D. Cal. 2025) (Pitts, J.) (similar);

[6] Plaintiffs are unable to cite to this case in the Court's preferred Westlaw system because the case does not appear to have been published on Westlaw.

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025) (similar); *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 WL 1278912, at *3-4 (C.D. Cal. May 5, 2026) (similar); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 WL 3268404, at *3-4 (N.D. Cal. Nov. 24, 2025) (similar); *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *2-3 (N.D. Cal. Jan. 6, 2026) (allegations that website tracked session activity and future web browsing activity "across the internet" are sufficient to confer Article III standing); *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 599 (9th Cir. 2020) (similar); *Patel*, 932 F.3d at 1272 (similar); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 866 (N.D. Cal. 2025) (allegations that website misrepresented consent mechanisms and tracked user activity across multiple sites and sessions sufficient to confer standing); *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (similar); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1104 (S.D. Cal. 2025) (similar). Therefore, Plaintiffs' allegations as to HP's misrepresentations and related unauthorized tracking and disclosure of Plaintiffs' Sensitive Information satisfy Article III's concreteness requirement.

Consistent with these cases, Plaintiffs allege that HP procured the Tracking Entities to facilitate deployment of the Tracking Tools on the Website. *See* ¶¶ 2-9, 46-58, 73-212. Plaintiffs allege that the Website's Cookie Banner and Cookie Settings falsely represented that Plaintiffs' Sensitive Information would not be sold/shared without their affirmative consent. *See* ¶¶ 46-72, 238-47. Despite those representations, the Tracking Tools intercepted and shared Plaintiffs' Sensitive Information with the Tracking Entities without Plaintiffs' affirmative consent. *Id.* HP and the Tracking Entities then used the insights derived from Plaintiffs' Sensitive Information for marketing and targeted advertising purposes, enhancing their bottom line. *Id.* Thus, Plaintiffs' allegations are sufficient to confer Article III standing.

Relying primarily on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), HP argues that Plaintiffs have failed to allege what "embarrassing, invasive, or otherwise private information [was] collected." Mot. at 4 (quoting *Popa*, 153 F.4th at 791). HP continues, "[e]ach named Plaintiff alleges only that HP's Tracking Tools 'intercepted, recorded, and transmitted' their 'browsing activity, device identifiers, and related metadata' during routine visits to browse printers, copiers, cartridges, and laptops on the Website." *Id.* However, the interception in *Popa* involved only "session replay technology,"

which tracked users on a single site. *See Shah*, 824 F. Supp. 3d at 913; *Wiley*, 826 F. Supp. 3d at 1134; *Krzyzek*, 817 F. Supp. 3d at 863; *Gilligan*, 2026 WL 32259, at *2; *Camplisson*, 809 F. Supp. 3d at 1106. In contrast, the unauthorized tracking at issue here involves unique, persistent identifiers that enable the recognition of users across multiple sessions and websites. *See, e.g.*, ¶¶ 7, 73-212. Thus, "[t]he scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in [*Popa*] . . . ." *Gilligan*, 2026 WL 32259, at *2; *see also Camplisson*, 809 F. Supp. 3d at 1106 ("[*Popa*] is distinguishable from . . . this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases."); *Gabrielli*, 815 F. Supp. 3d at 867 ("[T]he session-replay technology [in *Popa*] was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website. In contrast, [the plaintiff here] alleges that the cookies [the defendant] stores on users' devices allow third parties 'to track and collect data in real time regarding . . . user input data,' which includes . . . 'search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information,' and also 'device information, session information, and/or geolocation data.'").

Further, in contrast to this case, "[t]he website owner in *Popa* did not indicate to users that it would not track their activities." *Wiley*, 826 F. Supp. 3d at 1134. "Here, plaintiffs allege that [HP] told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was. Plaintiffs have therefore sufficiently pleaded an injury-in-fact for purposes of Article III standing." *Id.*; *see also Shah*, 824 F. Supp. 3d at 914 ("Plaintiffs here allege that MFP told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared. This harm is thus similar in kind to a harm recognized as actionable at common law."); *See* ¶¶ 2-9, 15-26, 59-72, 238-47. Thus, *Popa* is readily distinguishable from this case.

HP's reliance on *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025), and *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026), fares no better. In *Khamooshi*, the complaint failed to "identify the browsing activity that was collected. . . ." *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026). Here, the Amended Complaint alleges that Plaintiffs used

the Website to browse and search for products such as ink cartridges and copiers and to compare product pricing, and that that information was then used for comprehensive profile building that was synced with third-party Tracking Entities. *See*, *e.g.*, ¶¶ 15-26, 51, 84, 93, 105, 137, 142, 230, 246, 286; *see also Dellasala*, 2026 WL 1138358, at *3. Thus, the Amended Complaint does not suffer from the pleading deficiency cited in *Khamooshi*. Like *Khamooshi*, the court in *Garcia* dismissed the complaint for a pleading deficiency not present here. *Garcia* reasoned that no highly offensive intrusion was alleged because the data allegedly collected by third parties "amounted to informing a third party about Plaintiff's interactions with [Defendant's] website," i.e., analogous to the session replay technology in *Popa* where tracking was limited to a single website, and in contrast to the comprehensive profile building alleged here, which facilitates tracking across multiple sites and sessions. *See Garcia*, 2026 WL 925028, at *5; *see also*, *e.g.*, ¶¶ 7 (The Sensitive Information intercepted by the Tracking Entities "includes persistent identifiers that enable recognition of users across sessions . . . ."); 49 (The Tracking Tools "contain unique identifiers that allow third parties to recognize and track individual users across different websites, including the Website, and across multiple browsing sessions."); 179 (TTD Pixel . . . enables the capture of data on each page of the website and across multiple websites"). Further, undercutting HP's argument, *Garcia* expressly reasoned that there are "at least two ways tracking technologies may result in highly offensive conduct," one of which is that "the scope of the collection may be so broad, for example by tracking a Plaintiff's activity across other websites, that it renders the tracking highly offensive." *Id.* at *5 (citing *Davis*, 956 F.3d at 598-99; *Popa*, 153 F.4th at 794). Based on the foregoing, Plaintiffs' allegations establish Article III standing.

## II. Plaintiffs Sufficiently Allege Claims Under CIPA and the ECPA.

Plaintiffs properly allege their CIPA and ECPA claims.

### A. Plaintiffs allege that HP intercepted content under the CIPA and ECPA.

Plaintiffs allege that HP intercepted content as defined under the CIPA and ECPA. Information that users enter into website forms or communicate to the website about themselves constitutes content. *See Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (holding "names, addresses, telephone numbers" and "URLs, button clicks, and viewing and cart history" plausibly constituted content because they were each information that users conveyed to

the website about their "personal interests, queries, and habits[.]" (citing *Davis*, 956 F.3d at 605)); *see also Wiley*, 826 F. Supp. 3d at 1135-36 (holding that "the alleged tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' could convey, among other things, what users were searching" and constituted content under Section 631); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) (Pitts, J.) (discussing specifically field submissions).

Here, HP cherry-picks among the types of data alleged to be at issue in arguing that the data collected does not include user-generated content under CIPA or the ECPA. Plaintiffs, however, allege in detail the vast quantity of information that HP and its partners collect, including both field submissions and details about themselves conveyed through express activity. For example:

1. Plaintiffs allege that the tracking tools gathered "information [users] entered into search fields." ¶ 7.

2. HP and its partners surveilled anything that users "type[d]" while on the website. ¶ 47. HP and its partners collected viewing and cart histories as well as URLs communicating Plaintiffs' interests. ¶¶ 74, 127, 165, 216-17 ("Here, the network requests intercepted by the Tracking Entities included detailed Request URLs containing the names and file locations of webpages, products users browsed on the Website, identifying information in the form of cookies, in addition to user activity information that indicates users' commercial activity and purchases.")

3. The TikTok Pixel that HP used collected users' entries of their "names, passwords, and authentication codes." ¶ 91. It also captured what users entered in the search bar. ¶ 165.

4. The Google Pixel also collected data about users' "form submissions." ¶ 127.

5. The Reddit Pixel collected searches that users entered on the website search bar. ¶ 145.

The Court has previously rejected a similar argument to HP's claim that Plaintiffs did not allege with sufficient granularity the content of their communications (i.e., what precisely Plaintiffs entered in search fields). *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1004 ("Plaintiffs do not need to plead the specific and presumably highlight sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred.").

### B. Plaintiffs sufficiently allege tracking.

HP next argues that Plaintiffs fail to allege that the communications were tracked in real-time. HP acknowledges an allegation on precisely that issue, however, but quotes only a snippet of it and criticizes the allegation for being "below the line" and a "generalized hypothesis." That the allegation appears in a footnote is irrelevant under Rule 12(b)(6). It is also not a "generalized hypothesis" but an allegation of fact regarding how the tracking tools in question operate:

> This processing of webpage data as it arrives is called "parsing," and allows web browsers to convert raw data received over the internet into structured data objects used by the renderer built-in to the browser to create images on the screen. This means that, unless a software command, like a Tracking Tool, is physically last to arrive at a device, it is loaded and executed before the communication has finished being received.

¶ 41 n.14; *see also* ¶¶ 28-45 (describing the technical process of communications between a user and a website, and how tracking tools monitor and intercept that traffic).

### C. The party exception does not apply if Plaintiffs' factual allegations are accepted as true.

Finally, given Plaintiffs' allegations regarding the interactions between themselves and third-party pixels, and HP's use of those pixels, the Party exception does not apply under either the ECPA or the CIPA. HP installed third-party pixels on its website that intercept and monitor traffic between users and HP's website, and which not only send the collected data to the third-party pixel operator but also to HP. *See, e.g.*, ¶¶ 45, 53, 73-74, 92. The third-party software owners have the capability to use the data collected for their own independent purposes, and do so. *See, e.g.*, ¶¶ 54-57. The U.S. Courts of Appeals for the Ninth, First, and Seventh Circuits have held that this suffices under the ECPA and that under such circumstances, the party exception does not apply. *See generally Davis*, 956 F.3d at 607-608. This also suffices under the "capability" approach under the CIPA. *See Krzyzek*, 817 F. Supp. 3d at 867-68; *Taylor v. ConverseNow Techs., Inc.*, No. 25-cv-00990-SI, 2025 WL 2308483, at *3-5 (N.D. Cal. Aug. 11, 2025); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898-901 (N.D. Cal. 2023).[7]

---

[7] HP's argument about the crime-fraud exception to the ECPA is irrelevant because it would only apply if HP were not a third party to communications between Plaintiffs and the companies behind the tracking software. Because, as discussed above, HP is a third party to those interactions, the crime-fraud exception is irrelevant.

**D. Plaintiffs sufficiently allege their CIPA claims.**

HP argues that Plaintiffs' CIPA claim must be dismissed because the statute in question applies only to communications through a telegraph or telephone. This is an old argument that has been repeatedly considered and rejected, including by this Court. *See, e.g.*, *Krzyzek*, 817 F. Supp. at 870 ("Numerous courts in this district and elsewhere have already found pixels to be 'pen registers' at the pleading stage, and [Defendant's] arguments tread no new ground."); *Hassid v. Alex and Ani, LLC*, 816 F. Supp. 3d 1196, 1205 (C.D. Cal. 2026); *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *2, 4-6 (N.D. Cal. Oct. 9, 2025) ("[M]ore recent litigation in this district has tested whether software trackers embedded in websites qualify as 'pen registers' when they collect users' IP addresses, device identifiers, and browsing data. Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and the undersigned, have held that such allegations suffice at the pleading stage.") (Breyer, J.); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-31 (N.D. Cal. 2024); *Moody v. C2 Educational Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023). This Court is among those that have already considered this question and held that pen registers do not apply exclusively to telephones. *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 936-937 (N.D. Cal. 2026) (Pitts, J.); *Wiley*, 826 F. Supp. 3d at 1128-29, 1136-37.

Courts, including this Court, have also repeatedly rejected HP's incompatibility argument regarding Plaintiffs' allegations about the surveillance of content and the statutory definition of a pen register. *See D'Antonio*, 820 F. Supp. 3d at 937; *Gabrielli*, 815 F. Supp. 3d at 872 (N.D. Cal. 2025) (discussing and agreeing with Judge Pitts' opinion in *In re Meta Pixel Tax Filing Cases*, *supra*); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1152-55.

Finally, HP misunderstands intent under the CIPA. Plaintiffs are required to allege that HP intended to engage in the conduct constituting the violation, but are not required to allege that HP knew that its actions were unlawful. *See Gabrielli*, 815 F. Supp. 3d at 870; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (finding sufficient intent allegations where "Plaintiffs allege that Defendant intentionally utilized tracking technologies to collect, use, and distribute Plaintiffs' sensitive information to third parties like Facebook."). Plaintiffs make the necessary allegations. *See, e.g.*, ¶¶ 244, 275, 277-78, 356, 371. The *Heiting* case, on which HP relies, does not state that a defendant must intend

to engage in or facilitate conduct that it specifically knows is unlawful. *See Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023). In *Heiting*, the Court determined that a contractual provision in the parties' agreement undermined the plaintiff's intent allegations. *Id.* The Court never held that the defendant needed to know that the activity it was furthering or in which it was engaging was unlawful. *Id.*

**III. Plaintiffs Sufficiently Allege Their Claims for Invasion of Privacy and Violation of the California Constitution.**

HP underrepresents the facts alleged in the Amended Complaint regarding the types of tracking in which HP engages and misunderstands the gravamen of the invasion-of-privacy claims and their predicates. HP goes to tremendous lengths to make its conduct appear innocuous, claiming the data it collects "are not akin to the types of highly personal or confidential information that courts have found support a reasonable expectation of privacy online." Mot. at 13-16. This is false, inconsistent with the Complaint's allegations, and fails to comport with the standard on a Rule 12(b)(6) motion of viewing the allegations in a light most favorable to Plaintiffs.

Plaintiffs allege that HP uses third-party software that collects data on Plaintiffs and shares that data with third parties and HP in order to assist both in manipulating and controlling Plaintiffs' online conduct. ¶¶ 283-87. And Plaintiffs also assert detailed and extensive allegations regarding the software's collection and exploitation of *highly* sensitive personal information. For example, Plaintiffs assert allegations regarding how HP uses the TikTok Pixel to manipulate Plaintiffs into spending more money on HP products by (1) adding the TikTok Pixel's surveillance of Plaintiffs' activity on HP's site to data collected by the TikTok Pixel elsewhere, and (2) exploiting the combined data profile on Plaintiffs to allow HP, TikTok, and TikTok business customers to better target Plaintiffs and manipulate their behavior. ¶¶ 76-99. HP uses TikTok's Pixel, which is "invasive" code "secretly embedded on Defendant's Website," and which "immediately links to data harvesting platforms that pick off usernames and passwords, credit card and banking information, and details about users' personal health" as well as "collects 'names, passwords, and authentication codes' and 'transfers the data to locations around the globe[.]'" ¶¶ 91-92 (citation omitted). HP also ignores Plaintiffs' allegations about its use of the Meta Pixel, which empowers HP, Meta, and other Meta customers to use data collected on HP's site,

and which is collected by the Meta Pixel elsewhere, against Plaintiffs to manipulate Plaintiffs and influence their purchasing behavior. ¶¶ 100-115. The data exploited includes details on a person's "interests" as well as their gender and location. ¶ 106. And the data HP transmits also empowers other companies using the Meta pixel to manipulate Plaintiffs. ¶¶ 114-15. Plaintiffs also allege that HP uses and collaborates with Google on Google Analytics, which similarly is designed to help both HP and third parties control and manipulate consumers. ¶¶ 125-39. The data collected by Google Analytics is extremely broad and invasive. ¶¶ 127-37. It includes data on "all the websites and apps the user uses[.]"¶ 137. HP also uses, participates in, and exploits the Reddit, Twitter, and the Trade Desk, and Bazaarvoice pixels as well as New Relic's surveillance technologies. ¶¶ 143-61 (Reddit Pixel); ¶¶ 162-76 (Twitter Pixel); ¶¶ 177-86 (the Trade Desk Pixel); ¶¶ 187-97 (New Relic surveillance technologies); ¶¶ 198-212 (Bazaarvoice Pixel).

HP also mischaracterizes Plaintiffs' allegations regarding Plaintiffs' choice to deny HP any legal right to surveil them and to use data collected to manipulate and control their behavior. HP's characterization that "the allegations reflect that users could adjust certain preferences, not that the Website would operate without collecting routine browsing and device-related data" presents an entirely fictitious and artificial gloss on the Amended Complaint that neither characterizes it accurately nor views it in a light most favorable to Plaintiffs. It misrepresents Plaintiffs' allegations about HP's disclosures and related privacy options and (as discussed above) the scope and intrusiveness of the data collected. What Plaintiffs actually allege is that (1) HP presented users with two options when it came to its extensive surveillance activities, and (2) which option a person saw depended on where he or she was located. In California, Colorado, Connecticut, Virginia, Utah, Florida, Oregon, Texas, Montana, Delaware, Iowa, Nebraska, New Hampshire, New Jersey, Tennessee, Minnesota, Maryland, Indiana, Kentucky, and Rhode Island ("Banner One States"), individuals were presented with the ability to outright refuse to be monitored and manipulated. *See* ¶¶ 59-66, 68 n.18. In Banner One States, HP blatantly ignored Plaintiffs' refusals and surveilled them anyway. *Id.* In the remainder of the country ("Banner Two States"), HP gave individuals the option to affirmatively opt into allowing HP and its partners to engage in the surveillance alleged. *See* ¶¶ 67-71. If a person in these states did not click "Accept," and just closed the option window, HP surveilled them anyway. ¶ 68. Although HP told

people in Banner One States that they agreed to surveillance by HP and its partners if they either affirmatively clicked accept *or* closed the option window, HP never said this to people in Banner Two States—it never communicated that declining to hit Accept, and just closing the option window instead, would constitute acceptance. ¶ 68. Accordingly, in *both* Banner One and Banner Two States, HP engaged in its conduct *regardless* of whether people consented to HP and its partners' privacy intrusions.

And despite HP's claims to the contrary, not a single case cited by HP supports the proposition that Plaintiffs lacked a reasonable expectation of privacy, or that the data collected by the pixels, like information on personal interests, a record of all websites visited, and apps used by a consumer, is insufficiently serious or offensive to support an invasion of privacy claim *as a matter of law*. HP's arguments seemingly fail to appreciate what makes its conduct as offensive as it was. HP seems to believe the claim is predicated purely on the extent and seriousness of the data it collected. Plaintiffs allege, however, that what also made their expectation of privacy reasonable and HP's intrusion into it highly offensive is that, although Plaintiffs refused to allow HP to intrude on their privacy, HP blatantly ignored them and invaded their privacy anyway. Under these circumstances, Plaintiffs have a reasonable expectation of privacy. *See Davis*, 956 F.3d at 603 ("However, *both* the nature of collection and the sensitivity of the collected information are important. The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, we must examine whether the data itself is sensitive *and* whether the manner in which it was collected...violates social norms."). As this Court explained in *Wiley*:

> [P]laintiffs allege that UMG told them that it would not collect advertising and analytics data using cookies on users' computers. Plaintiffs Wiley and Shah thought that they were opting out of tracking that they allege UMG nevertheless facilitated. Plaintiffs allege that the information UMG collected on them included "their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. UMG is correct that the information at issue, standing alone, may not involve the types of information in which users have an unqualified expectation of privacy. But in this case UMG allegedly represented to plaintiffs that it would not collect information for advertising or analytics if they opted out of such collection. A reasonable visitor to UMG's website who selected "Decline All" would thus reasonably expect UMG not to install performance and analytics cookies on their devices. Because UMG told users that they could opt out of such forms of information collection, users of UMG's website had a reasonable expectation of privacy with respect to that information.

826 F. Supp. 3d at 1131-32.

On the offensiveness issue, HP offers no caselaw indicating that, as a matter of law, a reasonable person would not find it "highly offensive" or an "egregious breach of social norms" for their privacy to be invaded *after* he or she expressly refused to permit the invasion, and no such caselaw appears to exist. *See* Mot. at 15-16 (citing *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)). In contrast, in *Wiley*, this Court rejected a similar argument to the one HP raises here, holding that the defendant's "misrepresentations about whether it would track" the plaintiffs' browsing behavior" made "the actions alleged . . . sufficiently 'highly offensive' for an invasion of privacy or intrusion upon seclusion claim at the pleadings stage." *Wiley***,** 826 F. Supp. 3d at 1133-34. And as noted in *Wiley*, courts are also reluctant to decide the offensiveness element as a matter of law at the pleadings stage. *Id.*; *see also Gabrielli*, 815 F. Supp. 3d at 868.

Finally, HP's representations regarding Banner Two are not only wrong for the reasons stated above, but also have no relevance whatsoever to Count III, which is a claim for invasion of privacy and violation of Article I, Section I of the California Constitution. Count III is raised by the California Plaintiffs who viewed HP's website while in California and who raise the claim on behalf of themselves and a proposed California subclass of persons who also "interacted with Defendant's Website while located in the State of California." ¶¶ 21-22, 25-26, 251, 290-91. Plaintiffs allege that Banner One was used in California, not Banner Two. ¶¶ 59-71, 68 n.18. HP's arguments about Banners it did not use in California are accordingly irrelevant to Count III.

## IV. Plaintiffs Have Stated Claims for Common Law Fraud.

To recover damages for fraud, a plaintiff must show: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Shah*, 824 F. Supp. 3d at 922 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)); *see also Wiley*, 826 F. Supp. 3d at 1137-38. Fed. R. Civ. P. 9(b) imposes additional requirements which the Ninth Circuit has held are satisfied by pleading "the who, what, when, where, and how" of the alleged fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Here, HP challenges (a) whether Plaintiffs'

claims are pled with sufficient particularity, (b) whether Plaintiffs Wheeler and Sorkin allege justifiable reliance, and (c) whether Plaintiffs adequately allege scienter. *See* Mot. at 16-19. Notably, HP does not contest misrepresentation, intent, or damages. *Id.* In any event, Plaintiffs' claims meet the required elements.

**A. Plaintiffs' fraud claims are pled with sufficient particularity.**

HP argues that Plaintiffs' fraud claims fail for particularity because they "[do] not identify when any Plaintiff visited the Website, what specific version of the cookie banner was displayed on that date, what specific representations were made to each Plaintiff, what Tracking Tools were allegedly deployed on each Plaintiff's device, what data was transmitted, to which Tracking Entities it was sent, or how any such conduct was inconsistent with the representations allegedly made." Mot. at 17. In sum, HP concedes the 'who' and the 'where,' but challenges the 'what,' 'when,' and 'how.'

Taking the 'when' first, the Amended Complaint alleges that Plaintiff Ianozi most recently visited the Website in August 2025; Plaintiff Wheeler in January 2026; Plaintiff Sorkin in January 2026; Plaintiff Koob in December 2025; Plaintiff Houseman in February 2025; and Plaintiff James in June 2025. ¶¶ 15, 17, 19, 21, 23, 25. HP's reliance on *Wiley*, *supra*, is unavailing. *See* Mot. at 17. In *Wiley*, the court reasoned that "plaintiffs ha[d] inadequately pleaded the 'when ... of the misconduct alleged'" because the plaintiffs alleged only that they visited the subject "websites at some unspecified point in the last four years." *Wiley*, 826 F. Supp. 3d at 1138 (quoting *Kearns*, 567 F.3d at 1126). Here, each Plaintiff alleges the month and year of their most recent visit to the Website, which is sufficient to establish the 'when' under Fed. R. Civ. P. 9(b). *See D'Antonio*, 820 F. Supp. 3d at 938.

As to the 'what' and the 'how,' Plaintiffs allege that they navigated to the Website and were immediately shown the Cookie Banner and Cookie Settings, which represented that Plaintiffs' Sensitive Information would not be shared and/or sold to third parties unless Plaintiffs affirmatively consented. ¶¶ 2, *Figures 1* and *2*, 3-9, 15-26, 59, *Figure 8*, 60-72. The Amended Complaint further alleges which version of the Cookie Banner was shown to each Plaintiff. *Id.* Plaintiffs allege that HP's representations in the Cookie Banner and Cookie Settings were false because the Tracking Tools had already been deployed and certain Tracking Tools persisted even after express rejection. ¶¶ 3-9, 59-212, 238-42. These allegations are sufficient to put HP on adequate notice of the fraud alleged and thus satisfy the

standards of Fed. R. Civ. P. 9(b). *See D'Antonio*, 820 F. Supp. 3d at 938 (citing *Kearns*, 567 F.3d at 1126) ("[Plaintiffs] allege that in or around November 2024 and February 2025, respectively, they visited [Defendant's] website and were immediately shown the popup cookie consent banner that represented they could decline all cookies by clicking 'Reject All.' This representation was allegedly false because [Defendant] in fact tracked plaintiffs' activity using cookies and transmitted their data to third parties. These allegations are sufficient to provide [Defendant] with 'adequate notice' of the fraud alleged."); *see also Gabrielli*, 815 F. Supp. 3d at 873 (same); *Pemberton*, 2025 WL 3268404, at *7-8 (same); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1035 (C.D. Cal. 2025) (same). Thus, HP's Motion should be denied on these grounds.

**B. Plaintiffs Wheeler and Sorkin have adequately alleged justifiable reliance.**

HP next argues that Plaintiffs Wheeler and Sorkin cannot allege justifiable reliance because they did not interact with the Cookie Banner. *See* Mot. at 17-18. HP asserts that "[a] plaintiff who does not interact with, act on, *or is not exposed to an alleged representation* cannot plausibly allege that the representation induced any action or inaction to his or her detriment." *Id.* at 18 (emphasis added) (citing *White v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-04048-SVK, 2020 WL 13578444, at *9 (N.D. Cal. Nov. 17, 2020)). But the allegations in the Amended Complaint make clear that Plaintiffs Wheeler and Sorkin *were exposed* to HP's misrepresentation that their Sensitive Information would not be shared with or sold to third parties without their affirmative consent, and that they acted upon that misrepresentation by continuing to use the Website. *See* ¶¶ 17-18, 19-20. HP's argument rests on a distinction between the affirmative action of clicking 'reject' and the affirmative action of continued browsing, but both responsive actions are caused by the same misrepresentation. That is to say, the distinction is without a material difference. HP's Cookie Banner dictated the mechanisms by which Plaintiffs could consent and represented that Plaintiffs would not be tracked *unless* they consented. *Id.* Plaintiffs Wheeler and Sorkin did not affirmatively consent to HP's use of the Tracking Tools, continued to use the Website, and were tracked anyway. Thus, Plaintiffs Wheeler and Sorkin were exposed to HP's misrepresentations and justifiably relied upon them.

**C. Plaintiffs have adequately alleged scienter.**

HP next argues that Plaintiffs fail to adequately plead scienter, despite Plaintiffs' allegations that HP controlled the source code of its Website, because the "assertion that HP 'controlled' its own source code does not support a plausible inference of knowledge or falsity, since every website operator in some sense can be considered to 'control' its own web properties website code." Mot. at 18-19. HP asserts that this "fact does not establish that HP knew and intended that certain Tracking Tools continue to operate contrary to user elections." *Id.* at 19. However, the allegations establishing a plausible inference that HP knew of its own misrepresentations are not limited to paragraphs 369 and 371, as HP claims. The Amended Complaint explains, in detail, the process by which each Tracking Tool must be implemented on the Website, and the terms HP must agree to prior to implementation of each Tracking Tool. *See* ¶¶ 94-99 (TikTok Pixel), 117-24 (Meta Pixel), 131-42 (Google Analytics), 157-61 (Reddit Pixel), 172-76 (Twitter Pixel), 180-86 (The Trade Desk Pixel), 195-97 (New Relic Browser Monitoring), 207-12 (Bazaarvoice Pixel). Effectively, HP argues that it not only failed to read the contracts it entered into with the Tracking Entities but also that it configured the Tracking Tools to intercept users' Sensitive Information regardless of their privacy elections, concluding that we must ignore that each of HP's errors errs toward harming users like Plaintiffs. Those arguments are insufficient to defeat the inference of knowledge established by Plaintiffs' well-pled allegations. Indeed, HP's (unsubstantiated) argument raises a factual dispute that cannot be resolved at the pleadings stage. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016) ("Knowledge, like the other elements of fraud, is a 'question of fact' and 'like any other fact, it may be proved by circumstantial evidence.'" (quoting *Palmquist v. Mercer*, 43 Cal.2d 92, 100, 272 P.2d 26, 31 (1954)). In any event, "proof indicative of fraud may be given by inference, by circumstances surrounding the transaction, and the relationship and interest of the parties." *Id.* (quoting *Dyke v. Zaiser*, 80 Cal. App. 2d 639, 654, 182 P.2d 344, 353 (1947)). Notwithstanding that Plaintiffs are not required to prove their claims at the pleadings stage, Plaintiffs' allegations establish a reasonable inference of scienter. Thus, HP's Motion should be denied.

**V. Plaintiffs Adequately Plead Unjust Enrichment.**

To plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly

retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Pemberton*, 2025 WL 3268404, at *8. Courts have permitted unjust enrichment claims where a plaintiff alleges an entitlement to defendant's profits derived from users' personal data. *See Davis*, 956 F.3d at 600; *Pemberton*, 2025 WL 3268404, at *8; *Gabrielli*, 815 F. Supp. 3d at 875. This case is no different. Plaintiffs' allegations that HP benefited financially by selling and/or sharing their Sensitive Information without consent are sufficient to establish unjust enrichment. *See A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024). Though Defendant argues that unjust enrichment cannot proceed as a standalone claim, that argument has been consistently rejected, including by this Court. *See Shah*, 824 F. Supp. 3d at 922 ("[Defendant] argues that plaintiffs' unjust enrichment claim fails because unjust enrichment is not a standalone cause of action and because there was no misrepresentation or omission. [Defendant] is incorrect as to both arguments."); *Wiley*, 826 F. Supp. 3d at 1138 (same); *D'Antonio*, 820 F. Supp. 3d at 938 (similar); *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 885 (N.D. Cal. 2024) (Pitts, J.) (similar); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1008 n.2 (similar). Indeed, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Shah*, 824 F. Supp. 3d at 922 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)); *see also Luxton v. Maneuver Mktg. PTE. Ltd.*, No. 5:25-cv-04004-PCP, 2026 WL 1741450, at *4 (N.D. Cal. June 16, 2026) (Pitts, J.) ("[A] court may construe an unjust enrichment cause of action as a quasi-contract claim seeking restitution."). Thus, HP's arguments fail. Plaintiffs have stated claims for unjust enrichment.

## VI. Plaintiff Houseman's New York GBL Claims Are Adequately Pled.

Plaintiff Houseman brings claims under two sections of the New York GBL. GBL Section 349 "prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce.'" *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1028 (9th Cir. 2024) (quoting GBL § 349). GBL Section 350 "prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service.'" *Id.* (quoting GBL § 350). "To succeed on a claim under § 349 or § 350, the plaintiff must show that the defendant 'engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"

*Id.* (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452-53, 967 N.E.2d 675, 675-76 (2012)).

Misleading statements that give rise to loss of control over personal data may support claims under GBL Sections 349 and 350 so long as the plaintiffs were exposed to the misleading statements and the deceptive conduct occurred in New York. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1014-15. Indeed, "[t]hese statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 690 N.Y.S.2d 495, 498, 712 N.E.2d 662, 665 (1999). Here, HP does not challenge whether its representations were consumer-oriented or misleading; HP only challenges the 'actual injury' requirement under GBL Section 349 and whether its representations can be classified as 'advertisements' under GBL Section 350. In each respect, HP's arguments do not withstand scrutiny.

**A. Plaintiff Houseman has adequately pled actual injury to support his claim under GBL Section 349.**

HP argues that Plaintiff Houseman suffered no actionable damages because the loss of control over, and diminution of value of, his Sensitive Information is too "conclusory" and "speculative" to show actual injury under GBL Section 349. *See* Mot. at 21 (citing *Whalen v. Michaels Stores, Inc.*, 153 F. Supp. 3d 577, 579-83 (E.D.N.Y. 2015)). However, Plaintiff Houseman's damages are neither speculative nor conclusory; Plaintiff Houseman has already experienced actual injury, and being unable to assess the exact quantum of the damages at the pleadings stage does not render his allegations 'conclusory.' Thus, *Whalen* is readily distinguishable. Further, courts in both the Second and Ninth Circuits have recognized that allegations of loss of control and diminution of the value of personal data, based on similar privacy claims, are sufficient to support GBL Section 349 claims at the pleadings stage. *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *9 (D. Ariz. Jan. 28, 2025). Moreover, where alleged pecuniary loss is sufficient to sustain common law fraud claims at the pleadings stage, that same loss is, a fortiori, sufficient to show actual injury to sustain claims under GBL Section 349. The New York Court of Appeals established in *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995), that a

plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual injury, *though that injury need not be pecuniary harm*. *See Oswego Laborers*, 623 N.Y.S.2d at 532, 647 N.E.2d at 744; *see also Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 896, 731 N.E.2d 608, 612 (2000). ("[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm"). Thus, pecuniary loss is a higher standard than actual injury. As explained above in Section IV, Plaintiffs have adequately pled claims for common law fraud, including the requisite pecuniary loss, arising from the unauthorized sale/sharing of their Sensitive Information. And those allegations are sufficient to establish Plaintiffs' pecuniary loss at the pleadings stage. *See D'Antonio*, 820 F. Supp. 3d at 938 ("Here, plaintiffs allege that [Defendant's] alleged misconduct resulted in the 'diminution of the value of their private and personally identifiable information and communications.' At the pleading stage, plaintiffs' allegations are sufficient to allege fraud damages." (citing *Gabrielli*, 815 F. Supp. 3d at 873)); *Davis*, 956 F.3d at 599-600; *Pemberton*, 2025 WL 3268404, at *7; *see also A.B.*, 737 F. Supp. 3d at 881 (analyzing similar allegations of harm under the fraud prong of the UCL). Thus, because Plaintiffs' allegations establish pecuniary loss sufficient to support claims for common law fraud, Plaintiff Houseman's allegations satisfy the lesser actual injury standard to support claims under GBL Section 349. As a result, HP's Motion should be denied.

**B. Plaintiff Houseman's GBL Section 350 claim is adequately pled.**

HP next argues that Plaintiff Houseman's GBL Section 350 claim is deficient because "HP's cookie banner and Cookie Settings interface on the Website do not qualify as "advertising" within the meaning of the statute." *See* Mot. at 22. Rather, HP argues, they are "disclosure mechanisms." *Id.* But GBL Section 350 applies broadly to "the conduct of any business, trade or commerce or in the furnishing of any service." And GBL Section 350-a(1) includes not only "advertising" and "labeling" of commodities and services but also the "extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." In other words, material misrepresentations or omissions as to how the commodities or services may be provided are also actionable. Indeed, where the privacy representation is embedded in or accompanies

the marketing of a product or service, i.e., when a company uses its purported privacy practices as a selling point for its services or products (e.g., 'we do not sell/share your data'), those representations constitute advertising of the underlying commodity/service. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 761 (W.D.N.Y. 2017) ("[T]he statements from the privacy policies identified by Plaintiffs plausibly could be read to reflect a definite promise by Excellus to maintain the security of the personal information that it collected and stored on its networks."). Administrative enforcement actions by the New York Attorney General against Meta[8] and by the FTC against Snapchat[9] further illustrate how safety and privacy representations in consumer-facing disclosures can be found misleading when the underlying practices fail to match the stated commitments. Such is the case here. HP utilized misrepresentations in its Cookie Banner and Cookie Settings to lull users, such as Plaintiffs, into a false sense of security in order to induce the use of HP's services and/or purchase of HP's products. Thus, the fact that HP's Cookie Banner and Cookie Settings may be disclosure statements does not defeat Plaintiff Houseman's GBL Section 350 claim, because the statements in the Cookie Banner and Cookie Settings were themselves misleading representations about the Website's collection and use of Plaintiffs' Sensitive Information in the context of the Website's sale and advertisement of commodities and services. Therefore, Plaintiff Houseman has stated a viable claim under GBL Section 350.

## VII. Plaintiff Houseman's Claims Under New York Civil Rights Law Sections 50 and 51 Are Adequately Pled.

To state a claim under N.Y. Civil Rights Law Section 51 (with Section 50 rendering the same act a criminal violation), "a plaintiff must prove: (1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York." *Lohan v. Take-Two Interactive Software, Inc.*, 73 N.Y.S.3d 780, 785, 97 N.E.3d 389, 394 (2018) (quoting *Gen han v. Perez*, 924 F. Supp. 2d 447, 454 (E.D.N.Y. 2013) (internal quotation marks omitted)). Here, HP challenges only the first element: whether Plaintiff Houseman's name or likeness has been used.

HP argues that the purported "defect in Plaintiff Houseman's §§ 50-51 claim is that the alleged

---

[8] 2007 N.Y. Op. Att'y Gen. No. 1 (Oct. 15, 2007).

[9] *In the Matter of Snapchat, Inc., A Corp.*, No. 132-3078, 2014 WL 1993567 (MSNET May 8, 2014).

transmission of a Facebook ID ('FID')—a numerical identifier stored in the c_user cookie—does not involve the use of a protected 'name, portrait, picture, or voice' within the meaning of the statute." Mot. at 23. However, courts have recognized that the statute applies to digital and online uses of protected identifiers. *See Molina v. Phx. Sound, Inc.*, 747 N.Y.S.2d 227, 228 (App. Div. 2002) (use of person's image on website supports Section 51 claim); *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 381 (S.D.N.Y. 2025) (use of digital replicas of living persons is covered by Sections 50 and 51). Here, HP did more than just transmit and/or use Plaintiff Houseman's FID; HP utilized the FID as part of compiling a detailed marketing profile on Plaintiff Houseman, which included unique identifiers such as Plaintiff Houseman's FID and email address, and then appropriated and sold that profile, depriving Plaintiff Houseman of the use of his own unique Sensitive Information.

While there is no binding authority addressing this specific issue, "when confronted with new technologies, [t]he appropriate course . . . is to employ the theory of statutory construction that general terms encompass future developments and technological advancements." *Lehrman*, 790 F. Supp. 3d at 381. Here, as in the visual or auditory context, construing Sections 50-51 to exclude comprehensive digital profiles "would frustrate the statutory purpose, and, for all practical purposes, enable commercial entities to appropriate individuals' identities without restraint." *Id.* Thus, the Court should find that Plaintiff Houseman has stated claims under N.Y. Civil Rights Law Sections 50 and 51.

## VIII. Plaintiffs Have Stated Claims for Declaratory Relief.

Finally, HP argues that Plaintiffs' claims for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, et seq., fail because (1) "the Declaratory Judgment Act is purely procedural . . . [and] does not create an independent cause of action," and (2) "[w]ithout a predicate violation, there is no 'actual controversy' to support declaratory relief." Mot. at 25. However, as explained above, Plaintiffs have adequately pled predicate violations to warrant relief under the DJA. In other words, Plaintiffs' allegations tether their claims under the DJA to HP's alleged violations of other statutory and common law duties. *See* ¶ 385; *see also City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("The availability of relief under the Declaratory Judgment Act presupposes the existence of a judicially remediable right." (internal quotation marks omitted)). Thus, the Court is within its discretion to grant both declaratory and injunctive relief, including declaring that HP must refrain from disclosing

consumers' Sensitive Information without authorization, that HP's unlawful conduct caused injury, and to impose injunctive relief requiring HP to keep Plaintiffs' Sensitive Information confidential. *See* ¶¶ 382-89; *see also Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021).

## CONCLUSION

For the foregoing reasons, HP's Motion should be denied. Should the Court grant HP's Motion for any cause of action, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. App'x. 670, 671 (9th Cir. 2017). Here, the amendment would not be futile. Given the highly technical nature of the Tracking Tools at issue in this action, Plaintiffs could provide additional details related to HP's procurement, deployment, and use of the tools.

DATED: July 31, 2026

Respectfully submitted,

By: */s/ Thomas E. Loeser*

Joseph W. Cotchett (SBN 36324)
Thomas E. Loeser (SBN 202724)
Andrew J. Fuller (*pro hac vice* forthcoming)
Gia Jung (SBN 340160)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
T: (650) 687-6000
F: (650) 697-0577
E: jcotchett@cpmlegal.com
E: tloeser@cpmlegal.com
E: afuller@cpmlegal.com
E: gjung@cpmlegal.com

Eduard Korsinsky (admitted *pro hac vice*)
Mark Jensen (*pro hac vice* forthcoming)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171
E: ek@zlk.com
E: mjensen@zlk.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, July 31, 2026, I filed the foregoing Plaintiffs' Opposition to Defendant's Motion to Dismiss using the CM/ECF system. Notice of this filing will be sent automatically by the CM/ECF system to all counsel of record.

*/s/ Thomas E. Loeser*
Thomas E. Loeser