Michael J. Stortz (SBN 139386)
Michael.Stortz@klgates.com
K. Taylor Yamahata (SBN 347192)
Taylor.Yamahata@klgates.com
K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Attorneys for Defendant
HP INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JAMES IANOZI, ROSS WHEELER, ADAM SORKIN, JENNY KOOB, JEAN HOUSEMAN, and LINAY JAMES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HP INC.,

Defendant.

Case No. 5:26-cv-02164-PCP (VKD)

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Date: September 24, 2026
Time: 10:00 a.m.
Location: Courtroom 8 – 4th Floor
Judge: Hon. P. Casey Pitts

Complaint Filed: March 12, 2026
Am. Compl. Filed: June 5, 2026

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Lack Article III Standing. ..... 1

B. Plaintiffs Fail to State a Claim Under CIPA § 631 and the ECPA. ..... 4

C. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Remains Deficient. ..... 8

D. Plaintiffs Fail to State a Claim for Invasion of Privacy. ..... 9

E. Plaintiffs' Claims Sounding in Fraud Fail. ..... 10

F. Plaintiffs Fail to Allege Unjust Enrichment. ..... 12

G. Plaintiff Houseman's New York Statutory Claims Fail. ..... 12

1. Plaintiff Houseman Has Not Pled Cognizable Damages. ..... 12

2. Plaintiff Houseman Has Not Alleged an Advertisement Under GBL § 350. ..... 14

3. The N.Y. Civil Rights Law §§ 50 and 51 Claim Fails. ..... 14

H. Plaintiffs Have No Basis for Declaratory or Injunctive Relief. ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) .................... 5, 6, 9, 10

*Barbash v. STX Fin., LLC*,
No. 20CV123 (DLC), 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020) .................... 15

*In re Blue Shield of California Priv. Litig.*,
No. 4:25-CV-03209-YGR, 2026 WL 2040561 (N.D. Cal. July 10, 2026) .................... 7

*Cantinieri v. Verisk Analytics, Inc.*,
No. 2:21-CV-6911 (NJC) (JMW), 2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024) .................... 13

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .................... 3

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .................... 5

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) .................... 14

*Correia v. Lulu & Georgia, Inc.*,
No. 3:26-CV-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) .................... 2

*Crano v. Sojern, Inc.*,
No. 3:25-cv-02600-JSC, 2026 WL 1670136 (N.D. Cal. Jun. 9, 2026) .................... 1, 2, 3

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .................... 5

*De Medicis v. Ally Bank*,
No. 21 CIV. 6799 (NSR), 2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022) .................... 13

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 4, 7

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) .................... 14

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .................... 4, 6

*Garcia v. Anschutz Ent. Grp.*,
No. 5:25-cv-02282-SSS-DTBx, 2026 WL 1278912 (C.D. Cal. May 5, 2026) .................... 7

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .................... *passim*

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .................................... 4, 12

*Gliksman v. Healthline Media, LLC*,
No. 24-cv-08650-AMO, 2026 WL 1908082 (N.D. Cal. June 23, 2026) ............................. 3, 7

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................................... 5

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................................................................... 15

*Heiting v. HP Inc.*,
2025 WL 2993673 (Cal. Super. Aug. 01, 2025) ............................................................ 8

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..................................................................... 3, 9

*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ................................ 3

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ................................ 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................................... 10

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .................................................................. 1, 3, 4

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) ................................. 1, 9

*Krzyzek v. Openx Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .................................................................. 4, 7, 12

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................................................................... 11

*Lien v. Talkdesk, Inc.*,
No. 24-CV-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ...................................... 3

*Limas v. Wayfair LLC, et al.*,
No. CV 25-11185-DMG (EX), 2026 WL 2351592 (C.D. Cal. Aug. 13, 2026) ....................... 2

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
225 F. Supp. 3d 1034 (N.D. Cal. 2016) ....................................................................... 11

*Messenger v. Gruner Jahr Printing & Pub.*, 208 F.3d 122 (2d Cir. 2000) ........ 14

*Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 3, 9

*Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 7

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ........ 1, 3, 4

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 7

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 6

*Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ........ 8

*Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ........ 8

*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) ........ *passim*

*Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) ........ 13

*Sunga v. Naver Corp.*, No. 21-CV-05143-HSG, 2026 WL 1102870 (N.D. Cal. Apr. 23, 2026) ........ 11

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 7

*Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, 2026 WL 1495202 (N.D. Cal. May 21, 2026) ........ 3, 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 1, 2

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 6

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........ 5

*Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577 (E.D.N.Y. 2015) ........ 13

*Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121 (N.D. Cal. 2025) (Pitts, J.) .......... 2, 5, 6, 10

*In re: Zeta Global Data Privacy Litig.*, No. 25 CIV. 5780 (PAE), 2026 WL 2254612 (S.D.N.Y. Aug. 5, 2026) .......... 12, 13

**Statutes**

Cal. Penal Code § 631 .......... 4, 5, 7, 8

Cal. Penal Code § 638.50 .......... 8, 9

Cal. Penal Code § 638.51 .......... 8, 9

Cal. Penal Code § 638.52 .......... 8

Declaratory Judgment Act, 28 U.S.C. § 2201 .......... 15

Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* .......... *passim*

New York Civil Rights Law § 50 .......... 12, 14

New York Civil Rights Law § 51 .......... 12, 14

New York Gen. Bus. Law § 349 .......... 12, 13, 14

New York Gen. Bus. Law § 350 .......... 12, 14

**Other Authorities**

Fed. R. Civ. P. 9(b) .......... 10

# I. INTRODUCTION

Plaintiffs James Ianozi, Ross Wheeler, Adam Sorkin, Jenny Koob, Jean Houseman, and Linay James' ("Plaintiffs") opposition glosses over the myriad deficiencies of their Amended Complaint ("AC"). Glaringly absent from the AC or the opposition are any specifics of Plaintiffs' interactions with Defendant HP Inc.'s ("HP") website, the specific data elements associated with Plaintiffs that were allegedly shared with third parties, or any resulting harm to Plaintiffs. The Court should grant HP's motion, and dismiss this action.

# II. ARGUMENT

## A. Plaintiffs Lack Article III Standing.

Plaintiffs lack Article III standing because they have not alleged facts showing a concrete injury specific to Plaintiffs themselves. While Plaintiffs generally argue that the sharing of data with third parties may cause concrete harm, "to say that a privacy injury *can* be concrete is not to say that the alleged privacy injury here *is* concrete." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178, 1181 (N.D. Cal. 2025) (emphasis in original). Instead, Article III mandates a showing that "the specific plaintiffs had suffered a concrete injury." *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).

To make such a showing, Plaintiffs must allege they have "suffered a harm traditionally actionable under common law." *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026); *Popa*, 153 F.4th 784 at 791. Plaintiffs must plead facts satisfying two core elements of the common law analogues of intrusion upon seclusion and public disclosure: (1) an intentional "intrusion into a private place, conversation, or matter" in which plaintiff "had an objectively reasonable expectation of seclusion or privacy"; (2) in "a manner highly offensive to a reasonable person." *Garcia*, 2026 WL 925028, at *4–5 (citations omitted); *accord Popa*, 153 F.4th at 791 (citations omitted). Generalized or hypothetical allegations not specific to Plaintiffs are insufficient. *Garcia*, 2026 WL 925028, at *6 (citing *Kishnani v. Royal Caribbean Cruises Ltd.,* No. 25-cv-01473-NW, 2025 WL 1745726, at * 4 (N.D. Cal. Jun. 24, 2025)); *Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, *4 (N.D. Cal. Jun. 9, 2026) (collecting cases).

Plaintiffs argue the AC satisfies both elements based on allegations that "the Website Cookie Banner and Cookie Settings falsely represented that Plaintiffs' Sensitive Information would not be sold/shared without their affirmative consent." Opp. at 5. That argument errs in two respects. *First,* it ignores Plaintiffs' own AC, which identifies two different banners, with different disclosures in each. *See* AC ¶¶ 59–60 (Banner One for California and other users); ¶¶ 67–68 & n. 18 (Banner Two for New York and other users). Banner Two contained no such representation; rather, it affirmatively disclosed that "We use cookies (or similar technologies) to personalize content and ads to provide social media features and to analyze our traffic." AC ¶¶ 2, 67. *Second,* the AC does not specifically allege which Banner each Plaintiff (other than Ianozi) encountered. No Plaintiff alleges to have relied on specific promises on either Banner, much less that he or she would not have used the website but for those promises. *See* AC ¶¶ 15–26 (generic allegations as to Plaintiffs' site visits). This is insufficient to establish standing, even under Plaintiffs' leading case. *See Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1133 (N.D. Cal. 2025) (Pitts, J.) (finding standing where defendant "affirmatively promised not to enable the tracking of plaintiffs' browsing behavior," and plaintiffs "'would not have used the Websites' otherwise").

And even if Plaintiffs had included such allegations in the AC, those would go only to whether Plaintiffs had an objectively reasonable expectation of privacy, rather than the "highly offensive" element. *Garcia*, 2026 WL 925028, at *5 (citation omitted). To meet that separate element, Plaintiffs must show that the collection or disclosure of Plaintiffs' own information involved "especially sensitive" data, or that the scope of defendant's collection was so broad as to render defendant's conduct highly offensive. *Id*. Plaintiffs' AC does not come close. The AC is wholly devoid of the key requirement of identifying which specific data elements associated with Plaintiffs were shared with third parties, as is required to establish Plaintiffs' "*personal* standing."[1] *Crano*, 2026 WL 1670136, at *4 (citing *TransUnion*, 594 U.S. at 423) (emphasis in original).

[1] The two cases presented in Plaintiffs' supplemental authority (Dkt. 19) are inapposite. Among other things, the complaints in those cases identified what specific data was collected from each plaintiff, in contrast to the AC in this action. *See Correia v. Lulu & Georgia, Inc.*, No. 3:26-CV-01186-GPC-JLB, 2026 WL 2343093, at *2 (S.D. Cal. Aug. 12, 2026); *Limas v. Wayfair LLC, et al.*, No. CV 25-11185-DMG (EX), 2026 WL 2351592, at *2 (C.D. Cal. Aug. 13, 2026).

Plaintiffs allege that third parties generally obtained browsing activity, device identifiers, related metadata, webpages and products viewed, inferred interests, age, location, email addresses, geolocation from IP addresses, and identifiers—all under the generic rubric "Sensitive Information." AC ¶ 7. But none of these elements constitute sensitive information, such as health-related data, that might support standing.[2] *Popa*, 153 F.4th at 791; *Garcia*, 2026 WL 925028, at *5 (distinguishing collection of information regarding commercial interactions from health or financial information). Further, no specific category is linked to any particular Plaintiff, nor is any generic category listed in paragraph 7 especially sensitive. *See, e.g.*, *Lien v. Talkdesk, Inc.*, No. 24-CV-06467-VC, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) (phone numbers and interests in retailer's products not sensitive); *Khamooshi*, 786 F. Supp. 3d at 1179–80 (IP addresses, browser and device data, and "other identifying information" not sensitive); *Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (IP addresses and location not sensitive); *Crano*, 2026 WL 1670136, at *3 (IP addresses, email addresses, browser information, detailed URLs not sensitive); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850–51 (N.D. Cal. 2025) (IP addresses, device and browser information, geographic information not sensitive); *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (user and device identifiers not sensitive).

Plaintiffs alternatively argue that they satisfy the "highly offensive" element since the "tracking at issue here involves unique, persistent identifiers that enable the recognition of users across multiple sessions and websites" and the scope of this alleged tracking is "materially more invasive than the limited tracking at issue" in *Popa*. Opp. at 18. However, the collection or "combination of multiple categories" does not *per se* implicate privacy rights; rather, courts "must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). As Plaintiff's own authority demonstrates, the aggregation of non-sensitive, record information—even to create

---

[2] For this reason, *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) and *Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, 2026 WL 1908082 (N.D. Cal. June 23, 2026) are inapposite, as each involved sensitive health data.

or match to profiles—is not highly offensive. *Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, 2026 WL 1495202, at *3–4 (N.D. Cal. May 21, 2026) (rejecting plaintiff's "argument that his privacy is invaded by the aggregation of data matched to his existing profiles" because "the information that was collected — IP addresses, device make/model/OS, browser type, and cookie identifiers" was "browsing information that does not suggest interception of embarrassing or sensitive data or a highly offensive disclosure and thus is not harm that establishes Article III standing") (citing *Popa*, 153 F.4th at 791 and *Khamooshi*, 786 F. Supp. 3d at 1179); *Shah*, 824 F. Supp. 3d at 916 (stating "'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data' . . . standing alone, may not involve information in which users have an unqualified expectation of privacy").

Even if building user profiles did implicate privacy concerns, Plaintiffs' argument fails because Plaintiffs do not allege that HP compiled such profiles. *Garcia*, at *5 (distinguishing cases where the defendant created customer profiles that tracked activity across browsing sessions and websites from a defendant that merely informs a third party about plaintiff's interactions with its website). Indeed, Plaintiffs rely on those cases where *defendant's own tools* allegedly directly tracked data across many other websites, which allowed defendant to build detailed user profiles. *See Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (Experian's tool compiled detailed profiles); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (Facebook's tool tracked data across millions of websites); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 860 (N.D. Cal. 2025) (defendant operated multiple websites and tracked user activity across those websites); *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (distinguishing Openx's tracking activity across hundreds of millions of websites from *Popa* tracking activity on a single website). Plaintiffs' AC makes no such allegations as to HP. It should be dismissed for lack of Article III standing.

**B. Plaintiffs Fail to State a Claim Under CIPA § 631 and the ECPA.**

Plaintiffs fail to state a claim under CIPA Section 631 or the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq*. CIPA § 631(a) contains four operative clauses

protecting against "(i) 'intentional wiretapping,' (ii) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' [] (iii) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities,'" and (iv) aiding and abetting another in unlawful conduct prohibited in the first three clauses. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (citations omitted). As Plaintiffs have not alleged a violation of clause one, only clauses two through four are at issue.

As to these, as well as the ECPA,[3] Plaintiffs seek to resuscitate their pleading based on four premises: (1) that the "contents" of their communications were intercepted; (2) that the alleged interception occurred while the contents were "in transit"; (3) HP is not a party to their communications with HP's own website; and (4) that clause four applies to their claims. But each premise is flawed, and fatally so.

*First*, the AC has not alleged interception of the contents of Plaintiffs own communications. While Plaintiffs argue that their pleading alleges "in detail the vast quantity of information that HP and its partners collect" (Opp. at 8), the AC fails to identify any communications that Plaintiffs themselves generated, what those communications were, or whether or how they were intercepted. This is insufficient to support a claim under CIPA. *See, e.g., Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (plaintiff's claims that communications were intercepted failed where she did not allege "that she herself actually made any communications that could have been intercepted once she had accessed the website," such as "that she made a purchase, entered text, or took any actions other than simply opening the webpage and then closing it"); *Wiley*, 826 F. Supp. 3d at 1136 ("The problem with plaintiffs' wiretapping claim, however, is that plaintiffs do not specifically allege that *their* communications were intercepted by any third parties.") (emphasis in original); *Shah*, 824 F. Supp. 3d at 919 (same); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229, at *16 (N.D. Cal. Oct. 16, 2025) (holding plaintiffs failed to plead a CIPA wiretapping claim because plaintiffs did

[3] Courts routinely analyze violations of CIPA § 631 and the ECPA together because "analysis for a violation of CIPA is the same as that under the [ECPA]." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (citation omitted).

not allege that user input data was generated by them); *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 901 (N.D. Cal. 2026) ("Plaintiffs have not pled the specific text of those URL[s], so the Court is unable to infer that they contained users' thoughts and ideas. These deficiencies doom most of Plaintiffs' allegations of 'communication.'"). As for the data elements that Plaintiffs generally identify (*see* AC ¶ 7), those do not constitute "contents" of communications under CIPA or the ECPA. Mot. at 6 (collecting cases); *see also Gabrielli*, 815 F. Supp. 3d at 871 ("[I]nformation that is limited to, say, webpage addresses or personally identifying information that identifies a webpage user, does not constitute 'contents.'"); *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d at 900–01 (holding search terms and general URLs that do not convey "inner thoughts and ideas" do not raise concerns of sensitive information or constitute "communications").

*Second*, the AC does not satisfy the "in transit" requirement. Plaintiffs argue they sufficiently alleged this key element, albeit through a single footnote in their ninety-four page AC that generally describes a technical process by which unspecified software may operate. Opp. at 9. Such generalized allegations, even if they had been presented above the line, do not satisfy Plaintiffs' burden of pleading interception of *Plaintiffs' own* communications in transit. *See Wiley*, 826 F. Supp. 3d at 1136 ("The problem with plaintiffs' wiretapping claim, however, is that plaintiffs do not specifically allege that *their* communications were intercepted by any third parties.") (emphasis in original); *Shah*, 824 F. Supp. 3d at 919 (same); *see also Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (finding allegations that merely restate statutory elements were insufficient to plead interception). To the extent Plaintiffs argue HP is a third party to communications Plaintiffs had with other parties, the AC does not include any allegations that HP intercepted those communications *in transit*. *See* AC ¶¶ 45, 53, 73–74, 92.

*Third*, while the crime-fraud exception can preclude the application of the party exception under the ECPA, Plaintiffs' opposition does not contend with this at all, stating only that "the crime-fraud exception is irrelevant" because "HP is a third party to those interactions." Opp. at 9 n.7. By

failing to address this argument, Plaintiffs concede that the crime-fraud exception does not apply.

Nor can HP be liable under the ECPA or the CIPA, since it is not a third party to user interactions on its own website. *Healthline Media*, 2026 WL 1908082, at *7 (holding the website owner "cannot eavesdrop on its own communication") (citations omitted); *Garcia v. Anschutz Ent. Grp.*, No. 5:25-cv-02282-SSS-DTBx, 2026 WL 1278912, at *5 (C.D. Cal. May 5, 2026) (holding interception was not actionable because defendant was the party meant to, and that did, receive the communications); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (same) (citing *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023)). Nor can HP be liable under the ECPA for any interception by third parties. *In re Blue Shield of Cal. Priv. Litig.*, No. 4:25-CV-03209-YGR, 2026 WL 2040561, at *6–7 (N.D. Cal. July 10, 2026) (collecting cases). Plaintiffs' remaining assertion (Opp. at 9 n.7) that HP is a third party to their communications with third parties is hopelessly at odds with the premise of their claims, which is that Plaintiffs did not want those third parties to access data generated by Plaintiffs' visits to HP's website.[4]

*Fourth*, Plaintiffs have failed to plead aiding and abetting under CIPA § 631 clause four because they have not alleged facts showing that HP aided and abetted other parties in unlawfully intercepting communications or using communications so obtained.[5] Specifically, Plaintiffs have not alleged they communicated on HP's website, the contents of their purported communications, or that any of Plaintiffs' communications were intercepted in transit. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (dismissing clause four claim where plaintiff failed to allege defendant intercepted communications in transit).

Thus, Plaintiffs' claims under CIPA § 631 and the ECPA fail.

---

[4] Plaintiffs' argument that the party exception does not apply because third parties have the capability to use data (Opp. at 9) would eviscerate the exception entirely, and is not supported by the authorities they cite. Those authorities only confirm that when an unannounced third party is "listening in," that party is a third party to the communications (and may not be subject to the party exception) where the third party uses the data for its own separate commercial purposes. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 607–08; *Krzyzek*, 817 F. Supp. 3d at 867–68. Here, by contrast, HP is not an unannounced third party, since Plaintiffs' claims arise from their alleged intentional visits to HP's website to browse for HP products. *See* AC ¶¶ 15, 17, 19, 21, 23.

[5] There is no liability under the ECPA for aiding interception by third parties. *In re Blue Shield of Cal. Priv. Litig.*, 2026 WL 2040561, at *6–7 (collecting cases). Plaintiffs' claims for aiding and abetting under the ECPA (*e.g.*, AC ¶¶ 277–78) fail as a matter of law.

### C. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Remains Deficient.

In asserting that their pen register/trap and trace claims are viable, Plaintiffs ignore the plain text of CIPA § 638.51 and its supporting sections, which were enacted to regulate telephone surveillance—not internet activity—and repeatedly reference "telephone lines" and "telephone numbers"—not websites or software technologies. CIPA § 638.52, for example, requires that any order authorizing a trap-and-trace device must identify the person "in whose name . . . the ***telephone line*** to which the pen register . . . is to be attached." *See* Mot. at 11 (emphasis added). The authorization framework reflects the Legislature's baseline conception of a pen register as telephone technology, and it makes no provision for authorizing one on a website or internet-based service. Plaintiffs' reading would criminalize routine website functionality such as collecting IP addresses or URLs and expose countless businesses to liability for standard internet practices, contrary to the Legislature's intent. *See Heiting v. HP Inc.*, 2025 WL 2993673 (Cal. Super. Aug. 01, 2025); *Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Jan. 27, 2025). Pending Senate Bill 690 "shows a Legislative intent that CIPA was not intended to apply to the website tracking tools at issue." *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *4 (Cal. Super. Dec. 10, 2025). In describing the bill's purpose, Senator Anna Caballero stated:

> I rise today to present SB 690, a Bill to protect California businesses from a wave of abusive and predatory lawsuits that are threatening jobs, innovation, and the very ability to do business in our state. [] California already has the strongest privacy law in the nation, the California Consumer Protection Act, or CCPA. Back in 2018, this Legislature passed CCPA to give consumers real control over their data using a modern opt out approach. Suing under CIPA for activity that's already governed by the CCPA goes against legislative intent, creates confusion, punishes compliance, and doesn't make Californians any safer. A private settlement doesn't create stronger protections for consumer or clearer rules for business.

*Id.* "If the California Legislature wanted to apply § 638.52 to the website tracking tools, it could do so by amending such provision." *Id.* at *3.

Separately, Plaintiffs' contention that § 638.51 applies even where software technologies capture "contents" collapses under the statute's own definitions. Pen registers and trap-and-trace devices, by definition, do not capture contents. Cal. Penal Code § 638.50(b), (c). Judge Wise squarely rejected an attempt to avoid this boundary, holding that if software captures content it falls outside § 638.51, and if it captures only metadata (such as IP addresses), plaintiffs lack a viable

claim. *See Mitchener*, 815 F. Supp. 3d at 851–52; *Kishnani*, 2025 WL 1745726, at *4.

Since Plaintiffs' CIPA §§ 638.50 and 638.51 claim is contrary to the plain meaning of the statute, their claims should be dismissed.

**D. Plaintiffs Fail to State a Claim for Invasion of Privacy.**

Plaintiffs' claims for California Constitution and common law claims for invasion of privacy fail because they have not alleged conduct rising to the level of a highly offensive intrusion.

*First*, as discussed in Section II.A, *supra*, Plaintiffs have not alleged collection of any highly sensitive data as opposed to routine operation of websites. *See In re Apple Data Priv. Litig.*, 824 F. Supp. 3d at 904 (dismissing constitutional invasion of privacy claim where plaintiffs did not plead "enough . . . for the Court to plausibly infer that data Apple allegedly collected contained the type of detailed personal information that courts have found to be highly sensitive"); *Seatgeek*, 2026 WL 1495202, at *7 ("[P]laintiff has not pleaded that his browsing information was embarrassing or sensitive data or that its disclosure would be highly offensive. Thus, he has not pleaded plausible claims for invasion of privacy."); *Zynga*, 600 F. Supp. 3d at 1049 ("Even when these pieces of information are considered holistically, the Court does not view the collection of email addresses, phone numbers, Zynga usernames, Zynga passwords, and Facebook usernames so private that their revelation would be highly offensive to a reasonable person.").

*Second*, Plaintiffs have not sufficiently alleged any other conduct that would rise to the level of a highly offensive intrusion. Plaintiffs argue that HP used the information collected by third parties "to manipulate Plaintiffs into spending more money on HP products." Opp. at 11. As discussed in HP's motion, the collection and use of the information Plaintiffs allege in the AC for website analytics and marketing purposes constitutes standard commercial and legitimate business functions, not socially repugnant conduct that can support invasion of privacy claims. Mot. at 14–15 (collecting cases). Plaintiffs' arguments that HP "manipulates Plaintiffs" or uses "'invasive' code" (Opp. at 11) are pure attorney characterizations and do not meet their obligations to plead highly offensive intrusions. Plaintiffs also argue that HP's purported promises of the ability to opt out constitute highly offensive behavior. Opp. at 12–13. As discussed in Section II.A, *supra*, any such promise goes only to whether Plaintiffs had an objectively reasonable expectation of privacy

and is not enough to meet the highly offensive bar. *Garcia*, 2026 WL 925028, at *5. For both reasons, Plaintiffs' invasion of privacy claim fails.

**E. Plaintiffs' Claims Sounding in Fraud Fail.**

Plaintiffs' AC fails to state claims for fraud, deceit, misrepresentation, and deceptive practices (Counts VI, VII, and IX), and their opposition does not show otherwise.

*First*, Plaintiffs' conclusory allegations are insufficient to support claims sounding in fraud. Plaintiffs argue that allegations of the month and year in which Plaintiffs visited HP's website are sufficient to plead the "when." But that does not suffice under Rule 9(b) standards. *See, e.g., Wiley*, 826 F. Supp. 3d at 1138 (holding failure to plead the specific dates plaintiffs visited the website was fatal because defendant could not "determine what specific representations regarding cookies were made on [its] website on the specific dates that [plaintiffs] visited those websites or determine how the websites were using any cookies placed on users' devices on those specific dates") (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)); *Shah*, 824 F. Supp. 3d at 921–22 (holding same).

Similarly, Plaintiffs' opposition identifies no specific factual allegations in the AC that plausibly show the "what" and "how." The AC does not contain any allegations of which cookie banner Plaintiffs Wheeler, Sorkin, Koob, Houseman, or James reviewed, instead alleging generally that each encountered or read a cookie consent banner. AC ¶¶ 17–26. The AC's general allegations of what users in certain locations would see, without any specific allegations as to what each Plaintiff actually did see, fail to meet Rule 9(b). The AC does not even generally allege which banner users in Illinois (where Plaintiff Sorkin resides) would see, much less the specific promise (if any) that Plaintiffs Wheeler, Sorkin, Koob, Houseman, or James reviewed or relied upon, or whether that statement appeared on the banner or in the underlying layers of the consent mechanism. *See* AC ¶¶ 17, 19, 21, 23, 25 (variously alleging that Plaintiff "encountered" unspecified banner or "engaged with the cookie consent mechanism"); *cf.* AC ¶¶ 61–62 (depicting portions of privacy preference centers available to "users" without reference to specific Plaintiffs).

The cases Plaintiffs cite in opposition are inapposite because none of those cases alleged there were multiple banners that differed depending on which state the plaintiffs were in, or involve

statements in the underlying consent mechanism. Here, the AC's vague allegations do not allow the Court or HP to identify the specific banner that each Plaintiff saw, or the statements in the banner or underlying consent mechanism that each Plaintiff reviewed. These deficiencies require dismissal of Plaintiffs' claims for failure to comply with Rule 9(b). *See Kearns*, 567 F.3d at 1126.

*Second*, Plaintiffs' fraud claims fail because they have not alleged facts supporting justifiable reliance. To satisfy this element, Plaintiffs must allege they would have behaved differently but for the alleged misrepresentation. *Sunga v. Naver Corp.*, No. 21-CV-05143-HSG, 2026 WL 1102870, at *16 (N.D. Cal. Apr. 23, 2026). Plaintiffs' AC carefully avoids identifying any specific statement each Plaintiff relied upon, and wholly fails to allege that any Plaintiff would have acted differently had they known the statement to be false. *See* AC ¶¶ 15–26 (generic allegations of Plaintiffs' site visits). Plaintiffs have therefore failed to plead reliance. *See Sunga*, 2026 WL 1102870, at *16 (collecting cases) (holding plaintiffs failed to plead reliance where they did not allege they would have behaved differently, but for the alleged representation); *accord Kearns*, 567 F.3d at 1126.

Plaintiffs Wheeler and Sorkin's claims fail for an additional reason. Their theory rests on seeing a banner that begins with "We use cookies" and informs users that they can manage their preferences by adjusting cookie settings, and then continuing to browse without clicking any of the available options. A plaintiff who neither accepted nor adjusted options when faced with a disclosed choice mechanism cannot plausibly allege they would have behaved differently if not for the representations embedded in that mechanism. *See id.* (collecting cases); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054–55 (N.D. Cal. 2025) (dismissing claim where plaintiffs were "presented with a Cookie Banner when they first arrived at the Website" that "gave Plaintiffs notice as to the use of cookies and provided Plaintiffs the option to change cookie consent preferences").

*Third*, Plaintiffs' conclusory allegations fail to adequately allege scienter. The opposition misses the point in arguing that HP's alleged entry into contracts with third parties and implementation of the third party tools establish a plausible inference that HP knew of purported misrepresentations. Opp. at 17. While Plaintiffs have alleged that HP knew and intended that the tools would continue to operate contrary to user elections, scienter cannot be inferred from mere

knowledge that tools were embedded in the site without plausible allegations that HP knew those tools were capturing data inconsistently with the banner's disclosures. Plaintiff's own authority confirms as much. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040–42 (N.D. Cal. 2016) (holding circumstantial evidence did not support a reasonable inference that defendant had knowledge of fraudulent scheme). For this additional reason, Plaintiffs' claims should be dismissed.

**F. Plaintiffs Fail to Allege Unjust Enrichment.**

Plaintiffs' unjust enrichment argument fails for two reasons. *First*, unjust enrichment is not a standalone cause of action. It is an equitable remedy, not a substantive claim. *See* Mot. at 19. *Second*, even if it were available, unjust enrichment requires that legal remedies be inadequate. Plaintiffs allege no facts showing that their legal remedies are insufficient. To the contrary, they seek damages under multiple legal theories. Where adequate legal remedies exist, equitable relief is unavailable. *See id.* Plaintiffs' position that unjust enrichment is available as a standalone claim is contrary to the cases cited in their opposition. *E.g.*, *Gilligan*, 2026 WL 32259, at *4 (dismissing unjust enrichment claim because plaintiffs failed to allege an inadequate remedy at law); *Krzyzek*, 817 F. Supp. 3d at 870 (same). The Court should dismiss Plaintiffs' claim for unjust enrichment.

**G. Plaintiff Houseman's New York Statutory Claims Fail.**

Plaintiff Houseman's statutory claims for violation of N.Y. GBL §§ 349 and 350 and N.Y. Civil Rights Law §§ 50 and 51 fail because: (1) the AC does not plead cognizable damages; (2) cookie banners or other disclosures cannot constitute advertisements; and (3) Plaintiff Houseman has not pleaded use of a name, portrait, picture, or voice for advertising or trade purposes.

**1. Plaintiff Houseman Has Not Pled Cognizable Damages.**

The opposition argues Plaintiff Houseman's "damages are neither speculative nor conclusory; Plaintiff Houseman has already experienced actual injury, and being unable to assess the exact quantum of the damages at the pleadings stage does not render his allegations 'conclusory.'" Opp. at 19. Plaintiffs do not identify any actual allegations or claims of "actual injury," nor can they, since the allegations in the AC on this point are conclusory and insufficient.

A recent decision in the Southern District of New York demonstrates why. In *In re: Zeta*

*Global Data Privacy Litig.*, plaintiffs claimed they suffered economic harm from the diminished value of their data, loss of control over their data, and defendants' economic profits. No. 25 CIV. 5780 (PAE), 2026 WL 2254612, at *8–10 (S.D.N.Y. Aug. 5, 2026). As to diminution in value, the court held that where "a plaintiff conclusorily or speculatively claims a diminution in value from disclosure of her private information, or does not plead an intent to ever monetize that information, courts have declined to find a cognizable injury." *Id.* at *8 (collecting cases). The court rejected plaintiffs' claims of economic harm from the diminished value of their data because plaintiffs did not allege "'the existence of a market for that information and how the value of such information could have decreased due to its disclosure.'" *Id.* (citing *De Medicis v. Ally Bank*, No. 21 CIV. 6799 (NSR), 2022 WL 3043669, at *4–6 (S.D.N.Y. Aug. 2, 2022)). The court rejected plaintiffs' claim of injury for loss of control over their data because plaintiffs did not "plead that the information collected from the named plaintiffs was 'valuable' information in which a consumer possesses a right of 'control.'" *Id.* at *9. Finally, the court rejected plaintiffs' claim of economic injury from defendants' increased profits because the complaint "does not more than broadly claim increased earnings for defendants." *Id.*

Other courts are in accord. *Cantinieri v. Verisk Analytics, Inc.*, No. 2:21-CV-6911 (NJC) (JMW), 2024 WL 5202579, at *15 (E.D.N.Y. Dec. 23, 2024) ("Courts have found that plaintiffs fail to plausibly allege an Article III injury in fact for the diminution of the value of a plaintiff's PII where the plaintiff does not allege the existence of a "market" for the data that has been compromised or any other explanation for how the value of such data could have decreased because of its disclosure.") (citation omitted); *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 581–82 (E.D.N.Y. 2015) (holding plaintiff's diminution of value claim was "without merit" because plaintiff failed to allege how her information lost value).[6]

[6] Plaintiffs assert "courts in both the Second and Ninth Circuits have recognized that allegations of loss of control and diminution of the value of personal data, based on similar privacy claims, are sufficient to support GBL Section 349 claims at the pleadings stage" (Opp. at 19), but neither case supports this proposition. *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) (holding plaintiff's allegations of diminution of value were insufficient) and *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *9 (D. Ariz. Jan. 28, 2025) (not discussing diminution of value or loss of control).

The same result should follow here. Plaintiff Houseman's claims for damages from diminution in value of personal information and loss of control over personal data are conclusory statements. *See* AC ¶¶ 354, 357. The AC does not allege the existence of a market for the information, what the value of the information is, how the value of such information could have decreased due to disclosure, or any intent to monetize the information and therefore fails to plead any cognizable injury under GBL §§ 349 and 350. Similarly, Plaintiff Houseman's broad allegations that HP "appropriated" the "value of their information . . . for its own enrichment" (*id.*) are insufficient to plead injury from HP's purportedly increased profits.

Accordingly, the Court should dismiss Plaintiff Houseman's GBL §§ 349 and 350 claims.

**2. Plaintiff Houseman Has Not Alleged an Advertisement Under GBL § 350.**

Plaintiff Houseman's GBL § 350 claim fails for an additional reason: cookie banners, cookie settings, and privacy representations do not constitute advertisements under GBL § 350.

Plaintiffs argue GBL § 350 applies to privacy representations that are "embedded in" or accompany marketing of products or services. Opp. at 20–21. Plaintiffs do not cite a single case to support this theory. Instead, Plaintiffs mischaracterize *Fero v. Excellus Health Plan* as holding that privacy representations constitute advertising. *Fero* held the privacy policies could constitute a promise for purposes of a *breach of contract claim,* and did not consider whether they constitute advertising. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 761 (W.D.N.Y. 2017). Plaintiffs identify no cases holding a privacy representation can constitute advertising because none exist. *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *9 (S.D.N.Y. July 12, 2018) (dismissing § 350 claim with prejudice because plaintiff "cites no case law demonstrating that a privacy policy can constitute advertising, and this Court has found none"). The Court should dismiss Plaintiff Houseman's GBL § 350 claim.

**3. The N.Y. Civil Rights Law §§ 50 and 51 Claim Fails.**

Plaintiff Houseman's claim under Civil Rights Law §§ 50 and 51 fails because the AC does not allege the use of a protected "name, portrait, picture or voice" under the statutes. Plaintiffs' opposition claims that the use of a Facebook ID or marketing profile is sufficient under the statutes.

Opp. at 21. But it is black letter law that "the statute is to be narrowly construed and 'strictly limited to nonconsensual commercial appropriations of the ***name, portrait or picture*** of a living person.'" *Messenger v. Gruner Jahr Printing & Pub.*, 208 F.3d 122, 125–26 (2d Cir. 2000) (citations omitted) (emphasis added). While courts have found the statutes can apply to digital images, replicas, or avatars (*see* Opp. at 22), the use of numerical identifiers does not fall within the narrow confines of the statute. *See Barbash v. STX Fin., LLC*, No. 20CV123 (DLC), 2020 WL 6586155, at *2–3 (S.D.N.Y. Nov. 10, 2020) (holding allegations that defendants exploited plaintiff's "likeness and character" in creating and marketing a film were insufficient because plaintiff did not allege the use of her "name, picture, portrait, or voice"). Indeed, Plaintiffs concede that there is no authority addressing this specific issue. Opp. at 22. Moreover, as discussed in HP's motion, Plaintiff Houseman has not alleged use of his name, portrait, picture, or voice in any advertisement, nor has he alleged that HP capitalized on any recognizable attribute of his persona. Mot. at 24. Thus, Plaintiff Houseman's claim fails.

### H. Plaintiffs Have No Basis for Declaratory or Injunctive Relief.

Plaintiffs do not dispute that the Declaratory Judgment Act is purely procedural, that Count XI is duplicative of Plaintiffs' other claims, or that seeking injunctive relief requires a showing of a "real and immediate" threat of future injury. *See* Opp. at 22–23 (citing 28 U.S.C. § 2201). Plaintiffs' sole argument in their opposition is that they have adequately pled their other statutory and common law claims and that the Court can therefore grant declaratory and injunctive relief. *Id.* Plaintiffs' claims fail for the reasons discussed above, so no declaratory relief is available. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D. Cal. 2022). Nor do Plaintiffs address HP's contention that they lack standing to seek injunctive relief, given the lack of alleged immediate threat of injury. Mot. at 25. The Court should dismiss Count XI in its entirety.

## III. CONCLUSION

For the foregoing reasons, the Court should grant HP's motion to dismiss.

Dated: August 20, 2026

K&L GATES LLP

By: */s/ Michael J. Stortz*
Michael J. Stortz
K. Taylor Yamahata

Attorneys for Defendant
HP INC.