United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES IANOZI, et al.,
Plaintiffs,

v.

HP INC.,
Defendant.

Case No. 26-cv-02164-PCP

**ORDER GRANTING MOTION TO DISMISS IN PART**

Re: Dkt. No. 16

In this class action complaint, six named plaintiffs allege that defendant HP Inc. invaded their privacy by tracking their browsing history and other data on HP's website without their consent. HP moves to dismiss plaintiffs' lawsuit for lack of Article III standing and failure to state a claim. For the reasons stated below, the Court grants in part and denies in part HP's motion.

**BACKGROUND**

HP is a technology company that sells electronics including printers and computers.[1] This case concerns HP's collection of data from people who visit HP's website. HP uses third-party cookies and tracking pixels on its website to collect users' browsing data and personal identifiers including IP addresses, email addresses, and approximate geolocation.

The cookies HP uses are text files that identify users to websites and are stored on users' browsing devices. They allow third parties to track the user across different websites. The tracking pixels HP uses are stored on HP's own website. The tracking pixels are developed by third parties, including Meta, Reddit, TikTok, Twitter, and Google. The pixels log users' actions on HP's website and send them to both HP and the third-party pixel developer. The third-party developers

[1] The Court assumes the truth of the factual allegations in the complaint for the purposes of HP's 12(b)(1) and 12(b)(6) motions. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

then attempt to match the action to one of their own users. For example, if a user is logged into Facebook when visiting HP's website, the tracking devices allow Meta to link the users' actions on HP's website to that specific user's Facebook account. Both HP and the third parties benefit from HP's use of cookies and pixels. The collected data allows HP and the third parties to build comprehensive profiles on website users, refine advertisement and marketing strategies, sell such data, and ultimately "manipulate users' purchasing decisions and online behavior." Dkt No. 18, at 7.

Plaintiffs allege that two different privacy policy banners pop up when users first access HP's website. Which version appears depends on the location from which a user accesses the website. The first banner pops up in California and approximately twenty other states. This banner informs website users that HP "use[s] cookies and other technologies" to track users' data and activity on the website. Dkt. No. 1, ¶ 2, fig. 1. It informs users that HP collects data for the purpose of improving website function and personalization, optimizing advertisements and marketing, enabling third-party advertising partners to help HP target ads specific to users' interests "across the internet," and share user's information with "affiliates, partners, and third parties." *Id.* The California banner states that users agree to data collection if they click "Accept" or simply close the banner, but that users may reject the use of non-essential cookies and prevent HP from selling and sharing their information if they click "Reject."

The second banner pops up in New York and the remaining states. It is a similar, albeit briefer, version of the California banner. The New York banner states that HP collects website users' data. By clicking "Accept," the banner explains, website users agree to data collection and dissemination. The New York banner does not immediately present a "reject" or "opt-out" option, but the banner allows users to navigate to a button titled "More Options," where they can then opt out of non-essential tracking. *Id.* ¶ 2, fig. 2.

Each of the six named plaintiffs in this lawsuit encountered HP's privacy policy banners when browsing HP's website. Plaintiff James Ianozi is a resident of Delaware who rejected cookies when presented with the California banner. Plaintiffs Jenny Koob and Linay James are residents of California who rejected cookies when presented with the California banner. Plaintiff

United States District Court
Northern District of California

Jean Householder is a resident of New York who rejected cookies when presented with the New York banner. Plaintiffs Adam Sorkin and Ross Wheeler are residents of Illinois and Oregon, respectively, who declined to engage with the banners when they were browsing HP's website.

Each plaintiff alleges that, no matter which banner they received and whether they affirmatively rejected tracking or clicked out of the banner without interacting with it, HP collected their browsing activity, personal identifiers, and related metadata and shared that information with third parties. Plaintiffs sue on behalf of themselves and proposed nationwide and state classes of similarly situated people. They bring claims for wiretapping in violation of the California Invasion of Privacy Act (CIPA) and the Federal Electronic Privacy Communications Act (ECPA), use of a pen register in violation of CIPA, invasion of privacy under California common law and the California Constitution, common law fraud, unjust enrichment, deceptive business practices in violation of New York law, false advertising in violation of New York law, and name, image, and likeness misappropriation in violation of New York law. Plaintiffs seek damages, injunctive relief, declaratory judgment, and fees and costs.

HP now moves to dismiss plaintiffs' complaint for lack of Article III standing and failure to state a claim.

## LEGAL STANDARD

If a complaint does not establish a federal court's subject matter jurisdiction, including due to lack of Article III standing, the complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(1). Plaintiffs "must allege facts, not mere legal conclusions" and, "[a]ssuming compliance with those standards, the plaintiff's factual allegations will ordinarily be accepted as true unless challenged by the defendant." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Here, HP brings a "facial" challenge to plaintiffs' Article III standing, meaning that it "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *see also Bowen v. Energizer Holdings*, 118 F.4th 1134, 1142 (9th Cir. 2024).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to make a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil

Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

### I. Standing

Article III limits federal courts' jurisdiction to cases and controversies. U.S. Const. art. III, § 2. A "case or controversy under Article III" requires that a plaintiff have "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At issue here is the requirement that plaintiffs have suffered an "injury in fact" that is "concrete, particularized, and actual or imminent." *Id.* HP argues that plaintiffs have not pleaded such an injury because they have not pleaded any "highly offensive" collection of their "embarrassing, intimate, or otherwise sensitive information." Dkt. No. 16, at 13–14.

HP relies primarily on *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025). There, the Ninth Circuit held that a plaintiff had not established a concrete injury-in-fact for Article III standing purposes stemming from Microsoft's "session-replay technology," which

enables businesses to track users' browsing activity. The panel explained that the plaintiff had not established "how the tracking of her interactions ... caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791. The court elaborated that "the kind of harm and not the degree" is relevant for determining whether an alleged injury-in-fact is concrete enough relative "to a *specific* common-law tort" and that the injury must be one "that has traditionally been actionable in our nation's legal system." *Id.*

Here, the standing analysis under *Popa* differs between different groups of plaintiffs. Plaintiffs Ianozi, Koob, Houseman, and James rejected non-essential tracking. This group has adequately alleged Article III standing by pleading that HP's tracking was highly offensive, and thus akin to the harm recognized by the common law "public-disclosure-of-private-facts tort." *See Wiley v. Universal Music Grp., Inc.* (*Wiley I*), 826 F. Supp. 3d 1121, 1134 (N.D. Cal. 2025) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007)). A key principle is that deceit and affirmative misrepresentation can amplify the offensiveness of data collection. *See In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021). HP's cookie banner stated that it would not collect plaintiffs' nonessential data if they opted out, but HP nonetheless did so without plaintiffs' consent. The Court has previously determined that similar misrepresentations allege a "highly offensive" privacy intrusion that gives rise to an injury-in-fact. *Wiley I*, 826 F. Supp. 3d at 1134; *see also Shah v. MyFitnessPal, Inc.* (*Shah I*), 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026). Further, the Ninth Circuit recently concluded that the unauthorized disclosure of confidential information gives rise to Article III standing because such a disclosure is akin to the harm recognized by a common law action for breach of confidence. *Black v. IEC Grp., Inc.*, 193 F.4th 1277, 1283–85 (9th Cir. 2026). As in *Black*, the fact that HP "betrayed" plaintiffs' trust by collecting and disclosing information after representing that it would not do so constitutes an actionable harm. *Id.* at 1283.

In addition to HP's deceit, the purpose of HP's data collection compounds the offensiveness of the privacy intrusion for purposes of the public-disclosure-of-private-facts tort. HP allegedly used the surreptitiously collected data not only to track users on its own website but

also to build a comprehensive profile of website users' online behavior. Indeed, in HP's own words, the tracking tools helped HP and third parties build advertising profiles "across the internet," not just on HP's website. Plaintiffs argue that the goal of HP's tracking was ultimately to "manipulate users' purchasing decisions and online behavior." Dkt No. 18, at 7. Even if browsing activity on HP's website may not be information that is, standing alone, "embarrassing, invasive, or otherwise private," *Popa*, 153 F.3d at 791, the data collection becomes significantly more invasive when it is used to aggregate information on website users and manipulate their economic behavior, *cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020).

An example from *Popa* helps illustrate the point. *Popa* explained that the website tracking activity at issue in that case was "similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." 153 F.3d at 791. That analogy does not hold here. According to plaintiffs' allegations, HP's website tracking is more like a store clerk installing hidden cameras that simultaneously relay all of a shopper's physical movements and economic decisions to a global network of other stores. This involves a much more invasive privacy intrusion than the analogy *Popa* described.

Accordingly, the plaintiffs who opted out of tracking yet were still tracked have pleaded a "highly offensive" privacy invasion because they have alleged that HP's tracking was "invasive" and "involved deceit." *Wiley v. Universal Music Invs., Inc.* (*Wiley II*), No. 25-cv-03095-PCP, 2026 WL 2690163, at *5 (N.D. Cal. Sep. 14, 2026) (internal quotation omitted). Plaintiffs have also pleaded an injury akin to the harm recognized by a common law action for breach of confidence. *See Black*, 193 F.4th at 1283–84. HP's motion to dismiss Ianozi, Koob, Houseman, and James's claims for lack of standing is therefore denied.

The analysis changes, however, as to the plaintiffs who clicked out of the banners without rejecting tracking, Sorkin and Wheeler. HP made no affirmative misrepresentation that it would not track those plaintiffs. Instead, its privacy banners gave Sorkin and Wheeler notice that HP would track their data and share it with third parties. The California banner informed Sorkin that he agreed to tracking by closing the banner, yet he did so and continued browsing the website.

And the New York banner informed Wheeler that HP, as a baseline, engages in tracking. The banner explained that Wheeler would agree to such tracking by opting in, but never stated that HP would track Wheeler *only* if he opted in. As such, neither Sorkin or Wheeler have pleaded the misrepresentation or deceit that is a key factor in determining that HP's collection of data was "highly offensive." To the contrary, the banners put them on notice of HP's data tracking and they continued to use the website. Although plaintiffs maintain in conclusory fashion that they understood the banners to be promising that they would not be tracked unless they opted in, the plain text of the banners undercuts that argument. Given the notice that HP's privacy banners provided and Sorkin and Wheeler's failure to plausibly allege any misrepresentation or deceit, Sorkin and Wheeler have not shown that HP's data collection was highly offensive and thus have not adequately pleaded an injury-in-fact. HP's motion to dismiss Sorkin and Wheeler's claims for lack of Article III standing is therefore granted.

## II. Rule 12(b)(6) Motion

### A. California Wiretap Claims

California Penal Code § 631(a) prohibits:

> 1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally tap[ping] or mak[ing] any unauthorized connection ...with any telegraph or telephone wire, line, cable, or instrument"
>
> 2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"
>
> 3) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" and
>
> 4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above...."

The California plaintiffs maintain that HP violated Clause 2 by tracking and collecting their data, as well as Clause 4 by aiding the third-party owners of the cookies and tracking pixels to do the same. HP moves to dismiss on the grounds that plaintiffs have failed to allege that HP intercepted

the "contents" of any "communication" while the communication was "in transit." HP also argues that it cannot be liable under CIPA § 631(a) because it was a party to the communications that website users sent it.

The Court need address only HP's first argument—that plaintiffs have failed to allege the interception of contents of communications. Under CIPA § 631(a), the "contents of a communication" refers to the "'intended message conveyed by the communication,' including 'any information concerning the substance purport, or meaning of a communication.'" *Wiley I*, 826 F. Supp. 3d at 1135 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). "[R]ecord information regarding the characteristics of the message that is generated in the course of the communication" does not qualify as the contents of a communication. *Id.* (quoting *In re Zynga*, 750 F.3d at 1106). In other words, CIPA § 631 protects information that users intentionally conveyed to the website, such as search queries, but does not extend to information simply generated in the course of browsing, such as "pages viewed" or "IP address[es]." *Wiley II*, 2026 WL 2690163, at *4 (quoting *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021)).

The complaint fails to allege that HP intercepted the contents of any of plaintiffs' communications as opposed to merely intercepting record information about those communications. Plaintiffs contend that HP intercepted their browsing activity, device and personal identifiers, and related metadata. But none of those categories of information show that HP intercepted messages that plaintiffs communicated to HP as opposed to record information that plaintiffs' devices generated in the process of accessing and navigating HP's website. *See Yoon*, 549 F. Supp. 3d at 1082–83; *Shah v. MyFitnessPal, Inc.* (*Shah II*), No. 25-cv-04430-PCP, 2026 WL 2908824, at *4 (N.D. Cal. Sep. 28, 2026).

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs point to the fact that the complaint alleges that HP's tracking tools intercepted communications such as search queries. But the problem is that plaintiffs do not specifically allege that *their* communications were intercepted. For example, plaintiffs do not contend that they entered any search queries or field entries or made any other communications with HP's website. They contend only that they navigated the website.

United States District Court
Northern District of California

*Cf. Wiley I*, 826 F. Supp. 3d at 1136; *Shah I*, 824 F. Supp. 3d at 919; *D'Antonio v. Smith & Wesson Inc.* (*D'Antonio I*), 820 F. Supp. 3d 928, 936 (N.D. Cal. 2026). In the absence of any allegation that plaintiffs themselves interacted with HP's website in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid CIPA § 631 claim. Plaintiffs' § 631(a) claim is therefore dismissed with leave to amend.

**B. Federal Wiretap Claims**

The Electronic Communications Privacy Act (ECPA) prohibits the unauthorized interception of the "contents of any wire, electronic, or oral communication." 18 U.S.C. §§ 2510(4), 2511(1). The definition of "contents" of a communication mirrors the definition under CIPA § 631(a): The ECPA prohibits intercepting the "intended message conveyed by the communication" but does not protect "record information … that is generated in the course of the communication." *In re Zynga*, 750 F.3d at 1106. All of the named plaintiffs bring ECPA claims. HP moves to dismiss the ECPA claims for, among other reasons, failure to allege interception of the "contents" of a communication. For the same reasons discussed above with respect to the CIPA § 631(a) claims, plaintiffs have failed to allege that *their* communications with HP's website were intercepted. Accordingly, plaintiffs' ECPA claim is dismissed with leave to amend.

**C. Pen Register Claims**

California Penal Code § 638.51(a) prohibits "install[ing] or us[ing] a pen register" without a court order under specific circumstances. Section 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." The California plaintiffs bring claims under CIPA § 638.51(a). HP moves to dismiss on three grounds, but none are persuasive.

First, HP maintains that § 638.51(a) is limited to telegraph or telephone communications. As the Court has explained on multiple occasions, that argument is inconsistent with the statute's text and purpose, and the Court declines to read such an extra-textual limitation into the statute. *See Wiley I*, 826 F. Supp. 3d at 1136; *D'Antonio I*, 820 F. Supp. 3d at 936–37. Second, HP argues that plaintiffs have pleaded themselves out of a pen register claim because HP's data tracking

cannot be a pen register if it intercepts both the contents of a communication and record information about that communication. Again, the Court is not persuaded to reconsider its previous decisions rejecting this argument. *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025); *Wiley I*, 826 F. Supp. 3d at 1137. Third and finally, HP contends that plaintiffs have failed to allege the required scienter. But plaintiffs needed to allege only that HP intended to install the alleged pen registers, *see Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 870 (N.D. Cal. 2025), which the first amended complaint does. For these reasons, HP's motion to dismiss the pen register claims is denied.[2]

### D. Common Law Invasion of Privacy & California Constitution Invasion of Privacy

Plaintiffs next bring claims for common law invasion of privacy and intrusion upon seclusion (all plaintiffs) and claims for invasion of privacy under the California Constitution (the California plaintiffs). The Court considers these claims together because they have similar elements, *In re Facebook*, 956 F.3d at 601; *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012), and HP raises the same arguments as to each claim. Each claim requires, as relevant here, that (1) plaintiffs had a reasonable expectation of privacy in their collected data and that (2) HP's intrusion into that privacy interest was highly offensive. *See In re Facebook*, 956 F.3d at 601; *Low*, 900 F. Supp. 2d at 1024. HP argues that plaintiffs have not plausibly alleged either requirement.

*Reasonable Expectation of Privacy.* Whether plaintiffs had a reasonable expectation of privacy in the collected data is a mixed question of law and fact, informed by "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *In re Facebook*, 956 F.3d at 601–02 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). "To make this determination, courts consider a variety of factors,

---

[2] The Court recognizes that the California Legislature recently passed Senate Bill 690, which eliminates a private right of action for CIPA § 638.51(a) claims based on website tracking software. The Act takes effect January 1, 2027, and applies to claims in actions filed on or after January 1, 2025. Because HP has not moved to dismiss on the basis of S.B. 690, the Court need not address its impact on plaintiffs' claims at this time.

including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)).

In support of their invasion of privacy claims, plaintiffs allege that HP told them that it would not collect their advertising and analytics data when they opted out of tracking but nonetheless collected their browsing activity, device identifiers, and related metadata when it tracked their website activity without their consent.

HP is correct that the information at issue, standing alone, may not involve the type of information in which users have an unqualified expectation of privacy. But in this case HP allegedly represented to plaintiffs that it would not collect information for advertising or analytics if they opted out of such collection. A visitor to HP's website who rejected the use of non-essential tracking tools would thus reasonably expect HP not to install tracking cookies on their devices or collect their information using pixels. Because HP told users that they could opt out of such forms of information collection, users of HP's website had a reasonable expectation of privacy with respect to that information. *See Wiley I*, 826 F. Supp. 3d at 1132–33.

*Highly Offensive Intrusion.* Whether HP's intrusion into plaintiffs' privacy was "highly offensive" presents a mixed question of law and fact, *Hill*, 7 Cal. 4th at 40, and requires considering the "degree and setting of the intrusion" and "the intruder's motives and objectives," *Hernandez*, 47 Cal. 4th at 295. The "ultimate question of whether ... tracking and collection practices could highly offend a reasonable individual is an issue that [often] cannot be resolved at the pleading stage." *See In re Facebook*, 956 F.3d at 606. As a result, dismissal under Rule 12(b)(6) is appropriate only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests." *Hill*, 7 Cal. 4th at 40. As noted in the Court's earlier discussion of plaintiffs' Article III standing, "deceit can be a kind of 'plus' factor" in determining whether an action is highly offensive. *In re Google Location Hist. Litig.*, 514 F. Supp. 3d at 1157 (quoting *Heeger v. Facebook, Inc.*, 18-cv-06399-JD, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019)).

Plaintiffs have sufficiently alleged a highly offensive privacy intrusion. They have pleaded that HP affirmatively promised not to track them yet nonetheless did so. Plaintiffs allege that they

relied on HP's misrepresentation when browsing its website. Further, plaintiffs allege that HP undertook this data collection for the purpose of compiling comprehensive profiles of plaintiffs' internet activity, across more than just HP's website, in order to manipulate their behavior. Taken together, these facts are sufficient to preclude the Court from concluding, as a matter of law, that HP's invasion was not "highly offensive." The court therefore denies HP's motion to dismiss the common law and California Constitution invasion of privacy claims.

**E. Common Law Fraud, Deceit, or Misrepresentation**

All plaintiffs bring claims for common law fraud, deceit, or misrepresentation. These claims require: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Plaintiffs must satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement by pleading "the who, what, when, where, and how of the misconduct alleged." *Id.* at 1126. *But see D'Antonio v. Smith & Wesson Inc.* (*D'Antonio II*), No. 25-cv-03085-PCP, 2026 WL 2653811, at *4 (N.D. Cal. Sep. 8, 2026) ("Rule 9(b) requires that claims sounding in fraud are pleaded with particularity, but not absolute particularity."). One of Rule 9(b)'s purposes is to "provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Kearns*, 567 F.3d at 1125 (internal quotation marks omitted). HP contends that the remaining plaintiffs' fraud claims—Ianozi, Koob, Houseman, and James—should be dismissed for two reasons, but neither argument is convincing.

First, HP maintains that plaintiffs have not satisfied Rule 9(b) particularity requirement because they have not specified with particularity when they accessed the website. Each of the remaining plaintiffs, however, pleaded the month and year when they most recently navigated to HP's website and opted out of non-essential tracking. The Court has previously found that level of detail to satisfy Rule 9(b)'s requirements, *D'Antonio I*, 820 F. Supp. 3d at 937–38, and HP provides no justification to reconsider that determination here.

Second, HP argues that plaintiffs have failed to adequately allege scienter. But Rule 9(b)'s

heightened particularity requirement does not apply to scienter, and here plaintiffs have repeatedly alleged that HP knowingly and intentionally installed the tracking tools on its website even though it purported to offer users a chance to opt out of tracking. And plaintiffs also allege facts that provide inferential evidence of scienter, such as a motive and incentive for HP to track website users' behavior. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016) ("Knowledge … 'may be proven by circumstantial evidence.'" (quoting *Palmquist v. Mercer*, 43 Cal. 2d 92, 100 (1954))). As such, plaintiffs have sufficiently pleaded scienter. The Court therefore denies HP's motion to dismiss plaintiffs' fraud claims.

**F. Unjust Enrichment**

A defendant who unjustly enriches themself "may be required to make restitution." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015). "[T]he obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *Id.* (quoting Restatement (3d), Restitution and Unjust Enrichment, § 1 cmt. b). HP's only argument against plaintiffs' unjust enrichment claim is that the California plaintiffs lack a cause of action. As the Court has explained on multiple occasions, however, the Court may construe the unjust enrichment claim "as a quasi-contract claim seeking restitution." *E.g.*, *D'Antonio I*, 820 F. Supp. 3d at 938 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)); *see also Wiley I*, 826 F. Supp. 3d at 1138. Accordingly, the Court denies HP's motion to dismiss the California plaintiffs' unjust enrichment claim.

**G. New York Deceptive Business Practices**

Plaintiff Houseman brings claims under N.Y. Gen. Bus. Law § 349, which prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." A § 349 claim requires three elements: (1) the challenged act was "consumer-oriented"; (2) the act "was misleading in a material way"; and (3) actual injury. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). HP challenges only the third element, actual injury.

At this early stage of the litigation, Houseman has adequately pleaded actual injury under

United States District Court
Northern District of California

GBL § 349. Her alleged injury is the "the loss of control and value of [her] Sensitive Information and the unauthorized disclosure of Sensitive Information to [third-party] Tracking Entities." Dkt. No. 1, ¶ 330. This Court has previously found similar allegations sufficient to plead actual damages. *D'Antonio I*, 820 F. Supp. 3d at 938 (citing *In re Facebook*, 956 F.3d at 559–601; *Gabrielli*, 815 F. Supp. 3d at 873–74). HP points to several cases rejecting this theory of damages at the pleading stage when the plaintiffs did not allege the existence of a "market" for their data. *E.g.*, *In re Zeta Global Data Priv. Litig.*, No. 25-cv-5780-PAE, 2026 WL 2254612, at *8–9 (S.D.N.Y. Aug. 5, 2026); *Cantinieri v. Verisk Analytics, Inc.*, No. 21-cv-6911-JMW, 2024 WL 5202579, at *15 (E.D.N.Y. Dec. 23, 2024). But even though Houseman has not verbatim pleaded the existence of a market for her data, the complaint contains extensive allegations concerning how HP and the third-party tracking companies use website users' data to generate profitable advertising profiles. That inferential evidence is sufficient evidence of a market at this stage. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023). Therefore, Houseman's allegations that HP's tracking caused the loss of control and value of her data suffices to plead injury. *D'Antonio I*, 820 F. Supp. 3d at 938.

**H. New York False Advertising**

Plaintiff Houseman brings claims under N.Y. Gen. Bus. Law § 350, which prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." Stating a claim under § 350 requires pleading the same elements as New York's Deceptive Business Practices Law: that the advertising is (1) consumer-oriented; (2) misleading; and (3) causes actual injury. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). HP argues that Houseman has failed to allege the threshold requirement that HP's privacy banners qualify as an advertisement and that Houseman has not pleaded actual injury.

HP's first challenge is dispositive because the privacy banners here do not plausibly qualify as "advertising" under N.Y. Gen. Bus. Law § 350. The statute defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-A(1). Here, the privacy banners on HP's website do not advertise any commodity

or employment opportunity. Indeed, on their face, the banners do not relate to any of HP's products. And, as in *Cohen v. Casper Sleep Inc.*, plaintiffs have "cite[d] no case law demonstrating that a privacy policy can constitute advertising" under GBL § 350. 17-cv-9325-WHP, 2018 WL 3392877, at *9 (S.D.N.Y. July 12, 2018). Plaintiffs contend that the banners were a "selling point for [HP]'s services or products," Dkt. No. 18, at 16, but a representation about the shopping experience on HP's website does not turn the privacy banners into an advertisement of HP's commodities themselves. For example, if a grocery store promised a maximum checkout line wait of no more than three minutes, such a promise might attract customers but still would not be advertising "of a commodity" as opposed to about the store's general shopping experience. The same is true for HP's privacy banners. *See Casper Sleep*, 2018 WL 3392877, at *9. Accordingly, HP's privacy banners do not fall within the scope of § 350. Houseman's § 350 claim is dismissed with leave to amend.

**I. New York Name, Image, and Likeness Claim**

Houseman brings a claim under N.Y. Civil Rights Law § 51, which prohibits using a person's "name, portrait, picture, likeness or voice" "for advertising purposes or for the purposes of trade" without the person's written consent. A § 51 claim has four elements: "(1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York." *Lohan v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 389, 394 (N.Y. 2018) (citation omitted). The complaint alleges that HP collected and used Houseman's Facebook ID, which is a string of numbers that can be appended to www.facebook.com to navigate to her Facebook profile. Because a Facebook profile typically includes identifying information about a person's name, Houseman contends that a Facebook ID qualifies as a protected "name" under § 51. HP moves to dismiss on the ground that a Facebook ID is simply a "machine-readable data string," Dkt. No. 16, at 32, that does not qualify as a protected "name."

In *Lohan*, the New York Court of Appeals considered whether a video game avatar that was allegedly based on the plaintiff's likeness could qualify as an actionable "portrait" under § 51. *Id.* at 395. The Court explained that for an avatar to qualify as a portrait, the avatar needed to be

"recognizable" as the plaintiff. *Id.* Usually, whether an image presents a "recognizable likeness" and thus qualifies as a portrait is a question of fact. *Id.* But for that determination to reach the factfinder, the court must determine that the "person depicted is 'capable of being identified from the advertisement alone.'" *Id.* (quoting *Cohen v. Herbal Concepts*, 63 N.Y.2d 379, 384 (1984)). In other words, the determination is based on the "the identifiable characteristics present" in the depiction or data itself. *Id.*; *see also Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 381–82 (S.D.N.Y. 2025) (focusing on "recognizability").

A Facebook ID does not satisfy the criteria set out in *Lohan*. It is simple enough for anyone with access to the internet to learn the profile and name affiliated with a Facebook ID by navigating to Facebook's website. But it is not possible to identify any plaintiff from the face of their Facebook ID alone. An extra step—plugging the numerical string into the internet—is required. The fact that Houseman is not "recognizable" based only on her Facebook ID forecloses her § 51 claim. *Lohan*, 97 N.E.3d at 395. The Court therefore dismisses Houseman's § 51 claim with leave to amend.

**J. Declaratory Judgment Claim**

Finally, HP moves to dismiss plaintiffs' declaratory judgment claim on the grounds that the Declaratory Judgment Act is purely procedural and fails to provide any independent grounds for relief in the absence of another viable claim. Because plaintiffs have plausibly alleged pen register claims, common law invasion of privacy, California Constitution invasion of privacy, fraud, unjust enrichment, and New York deceptive business practices, HP's motion to dismiss the claim for declaratory judgment is denied.

## CONCLUSION

For the foregoing reasons, HP's motion to dismiss under Rules 12(b)(1) and 12(b)(6) is denied in part and granted in part. HP's motion to dismiss for lack of Article III standing is denied as to plaintiffs Ianozi, Koob, Householder, and James and granted as to plaintiffs Sorkin and Wheeler. HP's motion to dismiss for failure to state a claim is denied as to the remaining plaintiffs' pen register, common law and California Constitution invasion of privacy, common law fraud, unjust enrichment, New York deceptive business practices, and declaratory judgment

claims. HP's motion to dismiss the remaining plaintiffs' CIPA wiretap and ECPA wiretap, New York false advertising, and New York name, image, and likeness claims is granted with leave to amend. Plaintiffs must file any amended complaint within 28 days. Failure to file an amended complaint will result in the dismissal with prejudice of the claims dismissed in this order.

**IT IS SO ORDERED.**

Dated: November 24, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California